**Alton and Alice MALVO, on behalf of
Paula Malvo, a minor, Appellants,**

**v.**

**J. C. PENNEY COMPANY, INC.,
Appellee.**

No. 1630.

Supreme Court of Alaska.

July 13, 1973.

M. Ashley Dickerson and Sylvia L. Short, Anchorage, for appellants.

Kenneth P. Jacobus, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

BOOCHEVER, Justice.

This case arises from a civil action for false imprisonment and slander. The precipitating incident was the detention and questioning of three black teenage girls by a security employee of O'Neill Investigations who suspected them of shoplifting at the J. C. Penney Company's Anchorage store on December 17, 1969. Appellant, Paula Malvo, was a member of that group.

It appears that Paula, three teenage friends, and the mother of one of the girls entered the store to shop. Three of the teenagers were shopping for identical ensembles in the sportswear department where Susan Baxter, a security employee with O'Neill Investigations, was on duty. Although sales personnel were on duty, none assisted the teenagers. Paula and her friends made several trips into the dressing rooms at the same time that two other persons were using the rooms. After the girls had made purchases, the security guard, Baxter, who alleges she was keeping notes on a piece of paper, later lost, notified a clerk that she suspected she would need her help. Susan Baxter then found two empty hangers in the dressing room, notified the three girls that she was "security" and could not account for two blouses, and asked the three girls and the mother to go upstairs.

The guard motioned for the clerk to follow her and the group proceeded to the elevator with the guard and the clerk at the rear. Although there is some dispute as to the presence of other patrons in the immediate vicinity, it is undisputed that on the way to the elevator they encountered some teenage boys and when they arrived upstairs, the boys were there and chided them. Hillier, a store manager, was also upstairs and stood at the door of the office where the girls were searched. After the office door was closed, the guard asked the girls to drop their blouses and found no concealed merchandise. No effort was made to search or apprehend the other shoppers alleged to have been in the dressing rooms. After the incident, rumors of the girls having been stopped for shoplifting reached the pastor of their church and the girls' schoolmates.

A complaint was filed setting forth claims of slander and false imprisonment. An initial jury trial resulted in a defense verdict as to the slander claim and a divided jury as to false imprisonment. Upon retrial the jury rendered a defense verdict as to the remaining claim of false imprisonment. The trial judge awarded J. C. Penney $10,504.20, the full amount of attorney's fees requested under Civil Rule 82,

announcing that as a matter of policy a successful defendant should be granted his actual attorney's fees incurred to the extent that they are reasonable.

Paula Malvo, in appealing from the judgment rendered on both verdicts, alleges eight specifications of error. Three of those issues are dispositve of this appeal, and we reach only those additional points which must be resolved to avoid possible errors on remand.

## I. CHALLENGES OF JURORS FOR CAUSE BASED ON DEBTOR-CREDITOR RELATIONSHIP BETWEEN JURORS AND J. C. PENNEY

A number of issues have been raised with reference to the selection of the juries. Challenges based on debtor-creditor relationship between jurors and J. C. Penney were overruled. Rule 47(c) [1] sets forth 13 different paragraphs containing grounds for challenges for cause. Many of those grounds involve value judgments on the part of the trial judge. Thus, subparagraph (2) pertains to bias, (3) deals with the person's state of mind which will prevent him from rendering a just verdict, and (4) refers to opinions or conscientious scruples which would improperly influence his verdict.

■ It is well settled that challenges for cause under Rule 47(c), based on such grounds, are within the sound discretion of the trial judge, with which we are most reluctant to interfere. In Mitchell v. Knight, 394 P.2d 892, 897 (Alaska 1964), with reference to a challenge that a juror's state of mind would prevent him from rendering a just verdict, we stated:

> Civil Rule 47(c) places the determination of challenges for cause in the discretion of the trial judge. We shall interfere with the exercise of that discretion only in exceptional circumstances and to prevent a miscarriage of justice.[2]

---

1. Alaska Civil Rule 47(c) states:

   *Challenges for Cause.* After the examination of prospective jurors is completed and before any juror is sworn, the parties may challenge any juror for cause. A juror challenged for cause may be directed to answer every question pertinent to the inquiry. Every challenge for cause shall be determined by the court. The following are grounds for challenge for cause:

   (1) That the person is not qualified by law to be a juror.

   (2) That the person is biased for or against a party or attorney.

   (3) That the person shows a state of mind which will prevent him from rendering a just verdict, or has formed a positive opinion on the facts of the case or as to what the outcome should be, and cannot disregard such opinion and try the issue impartially.

   (4) That the person has opinions or conscientious scruples which would improperly influence his verdict.

   (5) That the person has been subpoenaed as a witness in the case.

   (6) That the person has already sat upon a trial of the same issue.

   (7) That the person has served as a grand or petit juror in a criminal case based on the same transaction.

   (8) That the person was called as a juror and excused either for cause or peremptorily on a previous trial of the same action, or in another action by the same parties for the same cause of action.

   (9) That the person is related within the fourth decree (civil law) of consanguinity or affinity to one of the parties or attorneys.

   (10) That the person is the guardian, ward, landlord, tenant, employer, employee, partner, client, principal, agent, debtor, creditor, or member of the family of a party or attorney.

   (11) That the person is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or been accused by him in a criminal prosecution.

   (12) That the person has a financial interest other than that of a taxpayer in the outcome of the case.

   (13) That the person was a member of the grand jury returning an indictment in the cause.

2. In *Mitchell* the appellant had challenged a juror for cause on two grounds:

   (1) that a debtor-creditor relationship existed between the juror and the appellee's counsel, because of the sale of

■ Other grounds for challenge set forth in Rule 47(c) are based solely on a determination as to whether certain factual situations exist. In those instances, once the facts are established there is no basis for discretion to be exercised by the trial judge. Thus, Rule 47(c)(1), (5), (6), (7) and (8) establish grounds for challenges for cause if it is shown that a person is not qualified by law to be a juror, has been subpoenaed as a witness in the case, that the person has already sat upon a trial of the same issue, that a person has served as a grand or petit juror in a criminal case based on the same transaction, or was previously called as a juror and excused at a previous trial of the same action. Similarly, other subsections specify grounds for challenges based on the existence of certain relationships (Rule 47(c)(9) and (10)). Where one of those relationships clearly exists, the trial judge must grant the challenge.

■ In each trial one or more jurors who had outstanding balances on their J. C. Penney charge accounts were challenged for cause. Rule 47(c)(10) of the Civil Rules provides in pertinent part:

> The following are grounds for challenge for cause:
>
> . . . .
>
> (10) That the person is the guardian, ward, landlord, tenant, employer, em-ployee, partner, client, principal, agent, *debtor,* creditor, or member of the family of a party or attorney. (Emphasis added.)

Once facts have been presented establishing such a relationship between the juror and a party, the grounds for challenge have been met. Accordingly, the failure of the trial judge to grant the challenge for those jurors who had a debtor-creditor relationship with J. C. Penney was error.

Moreover, we cannot say that this was "harmless error" within the rule of City of Kotzebue v. Ipalook, 462 P.2d 75 (Alaska 1969).[3] Malvo used all of her peremptory challenges under Civil Rule 47(d) and the denial of the challenges for cause under Civil Rule 47(c)(10) allowed those jurors to sit. Thus, we must remand for a new trial.

## II. ALLEGED RACIAL DISCRIMINATION IN JURY SELECTION

Neither jury contained a black person. Malvo argues on appeal that this is a "prima facie" case of "systematic and intentional exclusion" of her peers so as to be a violation of the constitutional right to a jury trial.

■ It is well established that the right to an impartial jury trial guaranteed in criminal proceedings by the sixth amendment to the United States Con-

---

the insurance policy from which the juror was receiving commissions based on the premiums paid by the counsel's law partnership [challenge based on Civil Rule 47(c)(10), supra]; and (2) on the ground that the juror's statement that he would be more conservative than the normal juror revealed a state of mind which would prevent him from rendering a just verdict. (Footnotes omitted.) Mitchell at 394 P.2d 897.

With regard to the first ground, we held that there was clearly no debtor-creditor relationship within the meaning of the rule since the "juror was owed no money by appellee's counsel." The second challenge was based on Civil Rule 47(c)(3) which provides as a ground for challenge of a prospective juror for cause: "(3) That the person shows a state of mind which will prevent him from rendering a just verdict . . . ." It was to this challenge that we addressed our language concerning the discretion to be given to the trial judge; and we held that since the juror had clearly stated that he "felt he could be fair and impartial, would allow a justifiable award, and that he would follow the instructions of the court", there was no showing of an abuse of discretion by the court in denying the challenge, especially in light of the trial judge's opportunity to listen to the juror and observe his demeanor.

3. In that case we held that it was harmless error to deny a challenge for cause where appellant had failed to exhaust the peremptory challenges granted under Civil Rule 47(d).

stitution[4] and article 1, section 11, of the Alaska Constitution[5] embraces the concept of trial by a jury constituting a fair "cross-section of the community". If prospective jurors are not drawn from that fair "cross-section", the constitutional standard of impartiality is not met. Alvarado v. State, 486 P.2d 891, 898 (Alaska 1971). *See also* Green v. State, 462 P.2d 994 (Alaska 1969). Although the "contours of a fair cross section of the community are elusive and, indeed . . . may not be susceptible of precise definition",

*Alvarado, supra,* 486 P.2d at 898–899, any method of jury selection which is "in reality a subterfuge to exclude from juries systematically and intentionally some cognizable group or class of citizens in the community" is clearly invalid.[6] Green v. State, 462 P.2d 994, 998 (Alaska 1969), *citing* Chance v. United States, 322 F.2d 201, 203 (5th Cir. 1963).

Malvo rests her argument solely on the fact that there were no blacks on either jury. While neither this court[7] nor the United States Supreme Court[8] has clearly

4. The sixth amendment to the United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been commited, which district shall have been previously ascertained by law.

5. Article 1, section 11, of the Alaska Constitution provides:

In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury

. . . .

6. In *Alvarado* we held that a failure to provide a criminal defendant with an impartial jury was in addition to a violation of the sixth amendment of the United States Constitution and article 1, section 11, of the Alaska Constitution, a denial of the constitutional right to due process of law. (*See* n. 20 in *Alvarado.*)

7. The right to a jury trial in certain civil trials is guaranteed by the seventh amendment to the United States Constitution and article 1, section 16, of the Alaska Constitution.

The seventh amendment to the United States Constitution provides:

*Trial by jury in civil cases.* In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.

Article 1, section 16, of the Alaska Constitution provides:

*Civil Suits; Trial by Jury.* In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law. The legislature may make provision for a verdict by not less than three-fourths of the jury and, in courts not of record, may provide for a jury of not less than six or more than twelve.

While these two guarantees do not specify that the juries must be "impartial" in the explicit manner adopted by the sixth amendment and article 1, section 11, of the Alaska Constitution, we indicated in *Bachner v. Pearson,* 479 P.2d 319, 333–334 (Alaska 1970) (dicta) that the constitutional test for both civil and criminal trials embraces the "fair cross-section" standard, and that the failure to meet that standard would be a denial of due process in a civil as well as a criminal action. Moreover, since Malvo argues that she has made out a prima facie case of the intentional exclusion of blacks from the jury, if she were correct in her contentions, a denial of equal protection under the fourteenth amendment to the United States Constitution and article 1, section 1, of the Alaska Constitution would be shown without the necessity of applying the broad "fair cross-section" due process standards of *Alvarado* and *Green. See* Bachner v. Pearson, *supra,* text at n. 29 and Eubanks v. Louisiana, 356 U.S. 584, 585–589, 78 S.Ct. 970, 2 L.Ed.2d 991–995 (1958). Thus if Malvo had been successful in meeting her burden of proof on the issue of intentional and systematic exclusion of blacks from the jury venire, she might have prevailed on an equal protection argument without the necessity of establishing that the same due process standards apply to both civil and criminal jury selections.

8. Although the United States Supreme Court indicated in Thiel v. Southern Pacific Co., 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181, 1184 (1946) that:

The American tradition of trial by jury, considered in connection with *either criminal or civil* proceedings, necessarily contemplates an impartial jury drawn

held that the "fair cross-section" standard is constitutionally compelled in civil trials, in the instant case, Malvo has not met her burden of proving a "systematic and intentional exclusion" even under the strict criminal trial standards of impartiality.

■ Under such standards for a constitutional defect to exist in a jury, it is well settled that the method of choosing the jury must be one that purposefully and systematically excludes an identifiable portion of the community, and it is not sufficient to show simply that the particular jury in question does not include a representative from all segments of the local population. In Swain v. Alabama, 380 U. S. 202, 205, 85 S.Ct. 824, 827, 13 L.Ed.2d 759, 764 (1965), the United States Supreme Court held:

[P]urposeful discrimination may not be assumed or merely asserted. . . It must be proven, . . . the quantum of

proof necessarily being a matter of federal law. (Citations omitted.)

The court went on to note at 380 U.S. 208, 85 S.Ct. 829, 13 L.Ed.2d 766:

[A] defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. . . . '[S]ince there can be no exclusion of Negroes as a race and no discrimination because of color, proportional limitation is not permissible.' (Citations omitted.)

■ While the courts have recognized that the only practical way a litigant may prove systematic and intentional discrimination is by showing a consistent lack of proportional representation through proof of objective results of the jury selection process,[9] these cases all involved proof of objective results over a long period of time

---

from a cross-section of the community. Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84 [86]; Glasser v. United States, 315 U.S. 60, 85, 62 S.Ct. 457, 471, 86 L.Ed. 680 [707]. (Emphasis added.) they rested their decision on their administrative powers over the federal court system and did not specifically reach the constitutional issue with regard to both civil and criminal jury trials. However, both the *Smith* and *Glasser* decisions cited as authority for the "cross-section" concept were based on constitutional grounds lending support to the proposition that a civil jury must also be drawn from a "fair cross-section" to meet constitutional standards.

9. In Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954), the United States Supreme Court summarized its holding in Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935) as stating that a "prima facie" case of denial of equal protection was established by

. . . proof that Negroes constituted a substantial segment of the population of the jurisdiction, that some Negroes were qualified to serve as jurors, and that none had been called for jury service over an extended period of time. . . . This holding, sometimes called

the "rule of exclusion", has been applied in other cases, and it is available in supplying proof of discrimination against any delineated class. Hernandez, *supra* at 347 U.S. 480, 74 S.Ct. 671, 98 L.Ed. 871.

Such a showing shifts the burden of going forward on the discrimination issue to the state.

It is to be noted at once that the indisputable fact that no Negro had served on a criminal court grand or petit jury for a period of thirty years created a very strong showing that during that period Negroes were systematically excluded from jury service because of race. When such a showing was made, it became a duty of the State to try to justify such an exclusion as having been brought about for some reason other than racial discrimination. Patton v. Mississippi, 332 U.S. 463, 466, 68 S.Ct. 184, 186, 92 L.Ed. 76, 79 (1947). (Citation omitted.)

*But see* Swain v. Alabama, *supra*, where the court held that a showing that no blacks had served on a petit jury for 13 years did not establish a prima facie case where the objective results could be explained by the existence of peremptory challenges at the trial level, and there was no evidence of discrimination in the selection process by which prospective jurors were called.

and with reference to a large number of juries. Under Malvo's argument the mere fact that there were no blacks on either jury in her case would establish a prima facie case of unconstitutional discrimination. Such a result would be directly contra to the well-established principle that ". . . the constitutional fair- and impartial-jury guaranty does not require that every economic, racial, or ethnic class shall be represented on every jury venire or panel." Nolan v. United States, 423 F. 2d 1031, 1035 (10th Cir. 1969). *See also* Swain v. Alabama, *supra* at 380 U.S. 208, 85 S.Ct. 829, 13 L.Ed.2d 766. Thus, Malvo has failed to sustain her burden of proving that the method by which the jury was selected was one that "is in reality a subterfuge to exclude from juries systematically and intentionally some cognizable group or class of citizens in the community." Green v. State, 462 P.2d 994, 998 (Alaska 1969).[10]

### III. JURORS' MEMBERSHIPS IN EXCLUSIVE FRATERNAL ORGANIZATIONS

A more difficult question is presented by Malvo's argument that it was an abuse of discretion for the trial judge to refuse to disqualify for cause those prospective jurors who were members of the Elks, Moose, or Shrine lodges since these organizations allegedly adhere to a Caucasian-only admission criterion. Civil Rule 47(c)(2) provides for a challenge based on bias. Civil Rule 47(c)(4) provides that a person may be disqualified where the trial judge finds that he has "opinions or conscientious scruples which would improperly influence his verdict" and Civil Rule 47(c)(3) provides as a ground for challenge for cause "That the person shows a state of mind which will prevent him from rendering a just verdict . . . ." In the first trial, Malvo was forced to use two of her peremptory challenges to disqualify prospective jurors who were members of the Elks or Moose lodges; and in the second trial, was forced to use peremptory challenges with respect to a member of the Shrine and a juror married to a member of the Elks. In addition, she alleges in her brief that "on the jury were persons who were members of organizations which systematically exclude and discriminate against members of the race . . . of Plaintiff" although it is not clear from the record what members of the jury were referred to.

We recognize that mere membership in an organization which adheres to a Caucasian-only membership policy is not per se grounds for challenge for cause.[11] For example, a person might very well be a member of such an organization with the sole intent of changing its membership criteria, and thus harbor no prejudice towards the classes of persons exclud-

10. Judge Singleton, the trial judge, fully recognized this point and gave Mrs. Dickerson, Malvo's attorney, an opportunity to provide sufficient proof of discrimination.

> I might point out that I am not ruling today on any challenge to the array, to the panel as a panel. I'm going to allow you, Mrs. Dickerson, to have an additional 60 days but only limited to that issue, to further investigate the methods used by the court system in choosing the entire panel. Now, of course, implicit in that is the specific panel that was used in this case. You may have sufficient time and you may utilize all the discovery devices normally available to a litigant. I will assure you that you will have the full cooperation of all of the employees of the court system in making your investigation. I am assurming 60 days would be sufficient. Should anything come to your attention that in your opinion merits further and additional investigation, you may bring that to the attention of the court and such additional time as is necessary will be granted.

The record is devoid of any response to this opportunity by Mrs. Dickerson.

11. For cases holding that mere membership in a particular organization is not grounds for disqualification per se, *see* 50 C.J.S. Juries § 229 and 47 Am.Jur. 2d, Jury §§ 323, 324. *See also* Annot., 72 A.L.R.2d 905 (1958).

ed by that policy.[12] However, membership in such an organization is some indication that the challenged juror may be incapable of discharging his duties free from improper influences or bias, where one of the parties in the case is a member of a class excluded by such a restrictive criterion. Where such a prospective juror is challenged for cause, it is incumbent on the trial judge to satisfy himself by appropriate questions and by observing the juror's demeanor, that the person is in fact capable of rendering an impartial and just verdict. Such a determination is then within the discretion we spoke of in Mitchell v. Knight, *supra*, and where there is sufficient evidence in the record to show that the trial judge has adequately performed this duty, we will not interfere.

In the instant case, there is evidence that in the first trial the judge had a rational and factual basis for denying the challenges. One of the challenged jurors stated that although he was a member of the Elks, he was in specific disagreement with its Caucasian-only policy. The other testified that he was an inactive member of the Moose, was unaware of any racially restrictive policy, and that he himself has been married to a non-Caucasian for 18 years. In the second trial, however, there is no such reflection in the record. The juror who was a member of the Shrine refused to describe the type of oaths he had taken when he joined the organization and stated that he considered blacks as "an equal, in some aspects, but not as far as the Masonic belief, . . ." Although he testified that he felt that he would be impartial in a trial involving a member of the black race, he also testified that if he was a black plaintiff and knew that there was

someone on the jury with his state of mind, that he would be concerned. On further questioning, he was evasive as to the racial nature of the membership oath he had taken.

People do not readily admit to bias, states of mind that prevent the rendering of a just verdict or opinions which would improperly influence their verdicts. Generally it is only from nuances derived from the jurors' testimony that a judge may ascertain whether grounds for such challenges for cause exist. Particularly when a prospective juror belongs to an organization which systematically excludes members of the race of a party to the suit, the trial judge must be sensitive to sometimes subtle inferences indicating bias, opinions or states of mind which could affect the juror's ability to render the just verdict. In this light we hold that it was an abuse of discretion to deny the challenge for cause as to the juror to whom we last referred.

## IV. THE FAILURE TO INSTRUCT ON AGENCY

During the first trial, in the presence of the jury, the court below stated correctly that J. C. Penney would be vicariously liable for the acts of Susan Baxter, the security guard, whether she was merely an employee of an independent contractor, O'Neill Investigations, or an agent of J. C. Penney.[13] However, at both trials the judge gave the following instruction:

*No. 9*

J. C. Penney Company is a corporation and as such can act only through its officers and employees. Any act or omis-

---

12. In a similar context, the United States Supreme Court has recognized in Scales v. United States, 367 U.S. 203, 229, 81 S.Ct. 1469, 1486, 6 L.Ed.2d 782, 802 (1961) that although a person may be a member of an organization dedicated to the violent overthrow of the United States government, there still must be "clear proof that a defendant 'specifically intend[s] to accomplish [the aims of the

organization] by resort to violence.'" Noto v. United States, 367 U.S. 290, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961); *cf.* Whitney v. California, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 (1927).

13. It is well recognized that a store owner is liable for the acts of employees or agents acting within the scope of their authority to protect the owner's property or

sion of an officer or employee within the scope of his authority or employment is, in law, the act or omission of such corporation.

There were many references during the trial pertaining to Susan Baxter's employment status. She testified twice that she was employed solely by O'Neill Investigations, and this was stressed by J. C. Penney. The trial judge asked questions distinguishing employment by J. C. Penney and O'Neill Investigations. Although there was some effort to clear up the matter when the trial judge stated:

> Mrs. Dickerson, the Court has ruled that even if O'Neill Investigation was an independent contractor that nevertheless the acts of their employee would be—or rather J. C. Penney's would be vicariously liable for the act of their employee.

this statement is still confusing and apt to be misleading due to ambiguity as to the employee referred to. Since the instruction that J. C. Penney could act only through their employees or officers implies that agents or employees of independent contractors are not included, it is a misstatement of the law and prejudicial error. We hold that on remand the trial judge should instruct the jury with reference to liability imposed for acts of an agent or employee of an independent contractor.[14]

## V. THE INSTRUCTION ON REASONABLE CAUSE AS A DEFENSE TO FALSE IMPRISONMENT

On the issue of reasonable cause as a defense against false imprisonment by a

merchandise. *See* Annot., Principal's Liability for False Arrest or Imprisonment Caused by Agent or Servant, 92 A.L.R.2d 15 (1959). *See also* Annot., Liability of Master or Principal for Servant's or Agent's Libel or Slander of One Other Than Servant or Agent or Former Servant or Agent, 150 A.L.R. 1338 (1943). The same rule applies to intentional torts of employees of independent contractors performing similar functions.

False imprisonment is an intentional tort, and while courts have held that an employer may not be liable for certain negligent acts of an employee of a private security agency under the "independent contractor" or doctrine, they have also recognized that the duty owed to the public by a store owner seeking to protect his property may be nondelegable in certain circumstances. *See* Annot., Liability of One Contracting for Private Police or Security Service for Acts of Personnel Supplied, 38 A.L.R.3d 1332 (1970). *See also* Annot. 92 A.L.R.2d § 19 [b] (1959). There is no question but that J. C. Penney is responsible for acts of O'Neill Investigations' employees allegedly involving the intentional tort of false imprisonment. The alleged slander presents a more difficult issue, since slander is not necessarily an intentional tort. The acts which it is contended constituted the slander consisted of escorting the plaintiffs to the manager's office through areas open to the public. These acts were so inextricably entwined with the protective functions for which the agency's services were secured that it is not permissible

to insulate J. C. Penney from liability. The duty of a store owner not to slander customers by attempts to protect his property is not delegable to an independent contractor where the acts alleged to violate that duty are within the scope of the usual services to be performed. Thus, J. C. Penney could not avail itself of the "independent contractor" defense with respect to either the alleged intentional tort of false imprisonment or the alleged breach of its duty not to slander Paula Malvo.

14. J. C. Penney argues that since no formal objection was made by Malvo to the instruction other than the submission of an alternate instruction in the first trial, that the issue is not preserved on appeal. Civil Rule 51(a) provides in part:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating distinctly the matter to which he objects and the grounds for this objection.

Since the case must be remanded in any event, we need not rule on the question of whether the error is so substantial as to result in injustice requiring reversal notwithstanding Rule 51(a). *Contrast* Bolden v. City of Kodiak, 439 P.2d 796 (Alaska 1968); Saxton v. Harris, 395 P.2d 71 (Alaska 1964); Mitchell v. Knight, 394 P.2d 892, 897 n. 10 (Alaska 1964); Novick v. Gouldsbery, 9 Cir., 173 F.2d 496, 12 Alaska 267, 275–276 (1949) *with* Merrill v. Faltin, 430 P.2d 913, 917 (Alaska 1967).

shopkeeper, the trial court instructed the jury:

### Instruction No. 26

The owner of property may, for the purpose of protecting it, restrain, for a reasonable time and in a reasonable manner, for the purpose of investigation, one whom he has reasonable and probable cause to believe is stealing his property.

### Instruction No. 27

To constitute reasonable grounds for the detention of the plaintiffs in this case, the evidence must establish that the conduct of plaintiffs as observed by defendant, through its employees, agents and servants, was such as to give defendant reasonable belief that plaintiffs had concealed merchandise upon their persons that had not been paid for.

If you find from all of the evidence that the foregoing facts are true, you must find that there was [sic] reasonable grounds to detain the plaintiffs.

If you find that such facts are not true, you must find that there was [sic] not reasonable grounds to detain them.

Malvo argues that this was error since (1) the trial judge should have submitted special interrogatories to the jury asking them to determine if the facts establishing reasonable cause were proved so as to give the jury explicit guidance as to what constitutes reasonable cause, and (2) the instructions do not place any burden on the store owner to take reasonable measures to ascertain that merchandise is missing or concealed on the suspect before initiating a detention and search.

15. Stienbaugh v. Payless Drug Store, Inc., 75 N.M. 118, 401 P.2d 104, 106 (1965) and Lukas v. J. C. Penney, 233 Or. 345, 378 P.2d 717 (1963) state that the function of the jury is to decide "which of the conflicting stories are true". In Miller v. Lee, 66 Cal.App.2d 778, 786, 153 P.2d 190, 195 (Cal.Ct.App.1944), the court stated:

While there is strong authority that the best method of instructing the jury in this situation is to submit special interrogatories asking them to determine if the facts constituting reasonable cause exist so as to avoid the possibility that the jury will invade the province of the court and make a legal decision as to reasonable cause,[15] it is well established that:

> [T]he number and form of issues submitted by way of special interrogatories, if they, along with the instructions to the jury fairly present the ultimate questions of fact to be determined, is a matter resting in the sound discretion of the trial judge. Patterson v. Cushman, 394 P.2d 657, 665 n. 26 (Alaska 1964). (Citations omitted.)

Thus we are to determine not what we might or might not choose as the best instruction, but if the instructions given adequately presented the fact issues to the jury.

In that regard, we believe that the instruction was adequate. We recognize the tremendous problem that shoplifting presents to the contemporary merchant. In the modern store, patrons have ready access to hundreds of items, often with little supervision or contact by store personnel until a purchase is made. Thus the store owner must strike a reasonable balance between feasible surveillance of customers, inventory control and the threat to a suspect's privacy. The instruction, which placed on the store owner the necessity of having a ". . . reasonable belief that the plaintiffs had concealed merchandise upon their persons", adequately conveyed the duty of the store owner to take reasonable detection measures before acting.

> The approved method is for the court to instruct the jury that if they find and determine certain questions of fact properly submitted to them to be true or untrue, their verdict must be for plaintiff, or for the defendant, as the case may be.
>
> See also California Jury Instructions, Civil, Instr. No. 6.86, at 240 (West, 5th ed. 1969) and cases cited therein.

This "reasonable man" standard is a familiar one in tort law, and juries have historically been asked to make similar factual determinations. While it might well be possible to write an instruction that would better delineate the boundaries of reasonable conduct by a store owner, we do not find that the instruction was erroneous.[16]

## VI. THE AWARD OF ATTORNEY'S FEES

The trial judge awarded the full amount of attorney's fees requested by defendant including compensation for all activities listed from the inception of the case, announcing this as a matter of policy provided that the fees are reasonable in terms of the charges normally made for comparable services within the community.[17] The fees were in an amount of $10,504.20 and included such activities as a motion by J. C. Penney for nonresident bond (denied), motion for costs of the intermediate judgment (denied) and a motion by defendant for summary judgment (denied).

While it is clear that a successful defendant may be a "prevailing party" within the meaning of Civil Rule 82, Owen Jones & Sons, Inc. v. C. R. Lewis Co., 497 P.2d 312 (Alaska 1972), and a party does not have to prevail on all of the issues in the case to be a "prevailing party", Buza v. Columbia Lumber Co., 395 P.2d 511 (Alaska 1964); DeWitt v. Liberty Leasing Co., 499 P.2d 599 (Alaska 1972); we reject the proposition that the prevailing party in each case should automatically be awarded the full amount of the attorney fees incurred.

We have recognized in several cases that the trial judge has wide discretion in the award of attorney's fees. Albritton v. Estate of Larson, 428 P.2d 379 (Alaska 1967); M–B Contracting Co., Inc. v. Davis, 399 P.2d 433 (Alaska 1965). In Palfy v. Rice, 473 P.2d 606, 613 (Alaska 1970), we stated:

[T]he matter of awarding attorney's fees is committed to the discretion of the

---

16. It is significant that since the events which led to the instant case, the Alaska Legislature has enacted AS 11.20.277 which provides a defense to false imprisonment actions against shopkeepers. The statute provides:

*Reasonable detention as defense.* (a) In a civil or criminal action brought by a person having been detained on or in the immediate vicinity of the premises of a mercantile establishment for the purpose of investigation or questioning as to the ownership of merchandise, it is a *defense that the person was detained in a reasonable manner* and for not more than a *reasonable time* to permit investigation or questioning by a peace officer or by the owner of the mercantile establishment, his authorized employee or agent, and that the peace officer, owner, employee or agent had *reasonable grounds to believe that the person detained was committing or attempting to commit a crime* as defined in § 275 of this chapter.

(b) In this section *"reasonable grounds"* includes knowledge that a person has concealed upon or about his person *unpurchased merchandise of the mercantile establishment*, and reasonsonable time means the time necessary to permit the person detained to make

a statement or to refuse to make a statement, and also the time necessary to examine employees and records of the merchantile establishment relative to the ownership of the merchandise. (§ 1 ch. 111 S.L.A.1971) (Emphasis added.) With this guidance from the legislature, the problem of framing future instructions should be greatly alleviated. Since we consider the statute to be consistent with our view of the common law, it may be utilized upon the retrial of this case.

17. Civil Rule 82 provides for the allowance of attorney's fees as costs to "the party recovering any money judgment", to "the prevailing party," or "to the prevailing side."

Alaska Civil Rule 54(d) provides:

Except when express provision therefore is made either in a statute of the state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs. The procedure for the taxing of costs by the clerk and review of his action by the court shall be governed by Rule 79.

AS 09.60.010 provides:

Except as otherwise provided by statute, the supreme court shall determine by rule or order what costs, if any, including attorneys fees, shall be allowed the prevailing party in any case.

trial court. We shall interfere with the exercise of that discretion only where it has been abused. An abuse of discretion is established where it appears that the trial court's determination as to attorney's fees was manifestly unreasonable. (Footnotes omitted.)[18]

Under this standard we feel that it is "manifestly unreasonable" automatically to award the full amount of attorneys' fees incurred by the prevailing party.

In Preferred General Agency of Alaska, Inc. v. Raffetto, 391 P.2d 951, 954 (Alaska 1964), this court announced its policy that:

> The purpose of Civil Rule 82 in providing for the allowance of attorney's fees is to *partially* compensate a prevailing party for the costs to which he has been put in the litigation in which he was involved. The rule was not designed to be used capriciously or arbitrarily, or as a vehicle for accomplishing any purpose other than providing compensation where it is justified. (Footnote omitted, emphasis added.)[19]

If a successful litigant were to receive full reimbursement for all expenses incurred in the case with no requirement of justification and no consideration of the "good faith" nature of the unsuccessful party's claim or defense, there would be a serious detriment to the judicial system. For where in order to seek judicial remedies, a plaintiff must risk liability for the full amount of attorney's fees the other side sees fit to incur, it takes little imagination to foresee that the size of a party's bank account will have a major impact on his access to the courts.

In Boddie v. Connecticut, 401 U.S. 371, 380, 91 S.Ct. 780, 787, 28 L.Ed.2d 113, 120 (1971), the United States Supreme Court held:

> . . . a cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard. The State's obligations under the Fourteenth Amendment are not simply generalized ones; rather, the State owes to each individual that process which, in light of the values of a free society, can be characterized as due.[20]

We do not have to reach the constitutional issue since it is "manifestly unreasonable" to establish a policy under Civil Rule 82 that would enable a store owner to receive such a sizeable allowance for attorney's fees against a party who has brought suit in good faith. Nor did the suit involve such complicated factual and legal issues or such substantial sums of money as to justify such a fee to be awarded against an unsuccessful litigant.

This danger was described by Benjamin N. Cardozo in a letter stating:

> I am not prepared yet to advocate costs that would compensate for the expenses of a lawsuit. I have seen enough of the judicial process to know its imperfections. I would not lay too heavy a burden upon the unsuccessful litigant. Some of the losses that are incidental to the establishment of rights and the redress of wrongs through the processes of courts should be allowed, as a matter of social engineering, to lie where they fall. Very likely, heavier burdens should be

---

18. *See also* DeWitt v. Liberty Leasing Co., 499 P.2d 599, 601–602 (Alaska 1972) where the same language was applied to the award of costs under Civil Rule 54(d).

19. We have cited this language on other occasions in DeWitt v. Liberty Leasing Co., 499 P.2d 599, 602 (Alaska 1972); Connelly v. Peede, 459 P.2d 362 n. 2 (Alaska 1969); Froelicher v. Hadley, 442 P.2d 51, 53 (Alaska 1968); McDonough v. Lee, 420 P.2d 459, 465 (Alaska 1966); Patrick v. Sedwick, 413 P.2d 169, 178–179 (Alaska 1966).

20. The court in *Boddie* left open the possibility that states could condition access to civil courts for "non-fundamental rights" on monetary requirements. Part of the decision rested on the fact that the right to a divorce could only be exercised through the court system, and the fees in question had to be paid before a litigant could get a hearing. However, the fees dealt with in *Boddie* were much less burdensome than the result in the instant case.

imposed where there is evidence of bad faith or mere dogged perversity. Benjamin N. Cardozo, by George S. Hellman, McGraw-Hill Pub. Co. (1940).

While we recognize that where there is evidence that a losing party did not have a good faith claim or defense [21] and all of the fees incurred by the prevailing party were justified,[22] a judge might well choose to award the full amount of fees requested; we hold that it was an abuse of discretion, to award J. C. Penney the full amount of of the legal fees here incurred. There is no indication from the record that Malvo did not have a good faith claim or was guilty of any reprehensible conduct that led to the suit. The purpose of Civil Rule 82 is to partially compensate a prevailing party for the costs and fees incurred where such compensation is justified and not to penalize a party for litigating a good faith claim.

The case is reversed and remanded for a new trial not inconsistent with this decision on both the slander and false imprisonment claims.

ERWIN and FITZGERALD, JJ., did not participate.

RABINOWITZ, Chief Justice (concurring).

I concur in the result reached in the case at bar and agree with the court's treatment and disposition of all issues raised in this appeal. Nevertheless, I consider it appropriate to note my concern regarding the issue going to the challenge for cause to prospective jurors on the basis of possible racial prejudice stemming from membership in the Elks and Moose Lodges—organizations which subscribe to Caucasian-only criteria. In my view, the judiciary in a multi-racial jurisdiction, such as Alaska, must be peculiarly sensitive to racial discrimination. The viability of Alaska's judicial system in general, and the use of juries in civil litigation in particular is dependent upon popular acceptance of such institutions.

In order to assure racial impartiality in our decision-making processes and to maximize the confidence of persons belonging to minority groups who come in contact with Alaska's judicial system, I believe the more preferable course for the trial judge to have followed in this case would have been to allow appellants additional peremptory challenges.[1] For here the record discloses that of the twenty-two prospective jurors questioned at one of the trials, four were members of the Elks or Moose Lodges.

21. In M–B Contracting Co., Inc. v. Davis, 399 P.2d 433, 437 (Alaska 1965), a case involving special considerations under the Alaska Workmen's Compensation Act (AS 23.30.145), we stated:
    This is not a situation in which it might have been said that the injured employee has appealed on frivolous grounds and should therefore be penalized by the taxation of an attorney's fee against him.

22. In DeWitt, supra, we said:
    We do not decide whether a denial of all costs would be justified in an extreme case of a vexatious prevailing party unreasonably prolonging the litigation and substantially increasing the costs. The trial judge in such a case would at least

be justified in disallowing particular items on the costs bill as unnecessary to the litigation. (Citations omitted.) 499 P.2d, n. 13 at 602.

1. Rule 47(d) of Alaska Rules of Civil Procedure provides in pertinent part:
    . . . A juror peremptorily challenged is excused without cause. Each party may challenge peremptorily 3 jurors. . . .
    Rule 94 of Alaska Rules of Civil Procedure provides:
    These rules are designed. to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.