THE SUPREME COURT OF THE STATE OF ALASKA

MARILYN PLYMIRE,               )
                               )  Supreme Court No. S-8058
            Appellant,         )
                               )  Superior Court No.
      v.                       )  3AN-95-9243 CI
                               )
EMBLEY-MOE PARTNERSHIP,        )
                               )
            Appellee.          )  MEMORANDUM OPINION
_____    )  AND JUDGMENT*
                               )
MARILYN PLYMIRE,               )  [No. 0932 - September 15, 1999]
                               )
            Appellant,         )
                               )
      v.                       )  Supreme Court No. S-8298
                               )
DON CLOYD, GEOSEARCH, INC.,    )
and D.C.E., INC.,              )
                               )
            Appellees.         )
_____    )

Appeal from the Superior Court of the State of
Alaska, Third Judicial District, Anchorage,
Karen L. Hunt, Judge.

Appearances:    Marilyn Plymire, pro se,
Anchorage.   Brent R. Cole, Marston & Cole,
P.C., Anchorage, for Appellees.

Before:   Matthews, Chief Justice, Eastaugh,
Fabe, Bryner, and Carpeneti, Justices.

---

* Entered pursuant to Appellate Rule 214.

1.  Marilyn Plymire sued Don Cloyd and three corporations that Cloyd allegedly represented (collectively, Cloyd) for failing to deliver gold for which Plymire had paid $78,411. Plymire claimed that in return for her payment Cloyd had promised her 261.39 ounces of gold refined to a purity of 86% or better but that he had delivered only 114.02 ounces. Plymire further claimed that of the gold delivered, 77.39 ounces met the specified purity, but one bar, weighing 36.63 ounces, tested at only 55.1% pure. Plymire accused Cloyd of negligence and breach for failing to deliver all of the promised gold and of fraud, misrepresentation, and unlawful conspiracy for delivering the bar of gold that proved to be insufficiently pure.

2.  In the same complaint, Plymire sued the Embley-Moe Partnership, a partnership holding title to Cloyd's place of business, alleging that Embley-Moe owed her a duty to restrain Cloyd from engaging in unlawful business activities on its property and that it had willfully breached this duty by allowing Cloyd's fraudulent conduct.

3.  The superior court granted summary judgment in favor of Embley-Moe and unconditionally dismissed it from the case, ruling that Plymire's complaint against Embley-Moe was grounded

-2-                                                                    0932

exclusively in tort and was therefore barred by the two-year statute of limitations set out in AS 09.10.070. The court thereafter awarded Embley-Moe full attorney's fees and costs.

4. The court similarly found that the statute of limitations barred Plymire's tort claims against Cloyd and, on this basis, granted partial summary judgment in Cloyd's favor. The case against Cloyd proceeded to a jury trial on Plymire's contract claims, and the jury returned a verdict for Cloyd.

5. Plymire appeals, asserting that the court made various evidentiary and instructional errors at trial, contending that the verdict fails to conform to the evidence, challenging the superior court's summary judgment rulings, and contesting the court's order awarding full attorney's fees and costs to Embley-Moe.

6. Plymire's evidentiary claims have no merit. She asserts that the court erred in excluding the Oxford Report from evidence, but the record establishes that the court admitted this document upon the parties' stipulation. She claims that the court erred in excluding her notes of meetings with Cloyd but offers no argument against the superior court's ruling that the notes were inadmissible because they were not business records. She maintains that the court erred in excluding photocopies of the three gold

-3-                                                    0932

bars that she claimed Cloyd had given her. But the record supports the trial court's finding that these photocopies did not accurately depict relevant characteristics of the gold bars and that, because Plymire had disposed of two of the three bars, the photocopies might prejudice Cloyd's defense. Having reviewed the record, we are not definitely and firmly convinced that the trial court made a mistake in any of these evidentiary rulings.[2] Accordingly, these rulings did not amount to an abuse of the court's discretion.[3]

7. Plymire contends that the trial court erred in characterizing her failure to preserve two gold bars as a spoliation of evidence and in instructing the jury that, for that reason, Plymire bore the burden of rebutting, by a preponderance of evidence, the presumption that Cloyd had not given her the bar that Plymire claimed was impure.[4] But even if the court erred in its ruling, the disputed spoliation instruction amounted to harmless

---

[2] Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin, 828 P.2d 745, 763-64 (Alaska 1992).

[3] See Hutchins v. Schwartz, 724 P.2d 1194, 1197 (Alaska 1986).

[4] Plymire also cursorily notes that the trial court overruled her objections to Cloyd's proposed Jury Instructions Nos. 37, 38, and 42. But the superior court did not give proposed instructions Nos. 37 and 38, and Plymire identifies no error in proposed instruction No. 42, which sets out a conventional definition of "agent."

-4-                                    0932

error. Unlike the case of Sweet v. Sisters of Providence in Washington,[5] where a similar spoliation instruction shifted the burden of proof from the plaintiff to the defendant, [6] the instruction here simply assigned Plymire a burden that she already had as plaintiff: the burden of proving all of her claims, including her claim that she obtained the impure gold bar from Cloyd. As Cloyd correctly notes, "by holding that the preponderance of the evidence standard applied, the trial court essentially returned the evidentiary ruling to its status quo and neutralized any advantage [Cloyd] might have gained from the rebuttable presumption."

8. Emphasizing the strength of the case she presented to support her claims, Plymire argues that the jury's verdict did not conform to the evidence. But in reviewing a verdict for sufficiency of evidence, we must defer to the jury's view of the weight and credibility of the testimony unless evidence supporting the verdict is completely absent or is so slight and unconvincing as to leave no "room for diversity of opinion among reasonable

---

[5]   895 P.2d 484 (Alaska 1995).

[6]   See id. at 490-92.

people."[7] The jury heard substantial evidence supporting Cloyd's defense and casting doubt on the credibility of Plymire's primary witness. Our review of the record persuades us that the evidence left ample room for diversity among reasonable jurors. Accordingly, we reject Plymire's claim.

9. Plymire contends that the superior court erred in granting summary judgment to Cloyd and to Embley-Moe on her tort claims and in dismissing the complaint against Embley-Moe on that basis. But Plymire built all of her legal claims against Cloyd and Embley-Moe -- her tort and contract claims alike -- on the same factual foundation: her contention that she had paid Cloyd for gold that he failed to deliver. In returning a verdict against Plymire on her contract claims, the jury unequivocally found that Plymire had failed to prove the factual theory common to all of her claims. Since we have found the jury's verdict to be free of error, it follows that all of Plymire's legal theories were factually unsupported and that any error committed by the court in dismissing her alternative legal claims was necessarily harmless.

10. Plymire last contends that the superior court erred in awarding full attorney's fees to Embley-Moe. "It is an abuse of

---

[7] Municipality of Anchorage v. Baugh Constr. & Eng'q Co., 722 P.2d 919, 927 (Alaska 1986).

discretion to award full attorney's fees . . . without an explicit finding of bad faith or vexatious conduct."[8]  Moreover, the court must clearly explain its reasons for making an increased fee award.[9]  Here, the superior court's order awarding full attorney's fees to Embley-Moe did not comply with these requirements.  The order mentioned Plymire's weak and unsupported cause of action and her pursuit of "unnecessary and needless litigation tactics" but did not expressly find either bad faith or vexatious conduct.[10]  We

---

[8]    Kowalski v. Kowalski, 806 P.2d 1368, 1373 n.7 (Alaska 1991); accord Stone v. International Marine Carriers, Inc., 918 P.2d 551, 558 (Alaska 1996); Malvo v. J.C. Penney Co., 512 P.2d 575, 587 (Alaska 1973).

[9]    See Kowalski, 806 P.2d at 1373 n.7.

[10]    In stating the court's basis for granting full fees, its order also referred to Embley-Moe's memorandum in support of its motion for full attorney's fees.  But while that memorandum listed Civil Rule 82(b)(3)(G) (allowing increased fees for vexatious or bad faith conduct) as a potential ground for awarding full fees, it did not expressly allege vexatious or bad faith conduct.  Indeed, it did not discuss vexatiousness at all and only mentioned bad faith parenthetically in a citation describing Crook v. Mortenson-Neal, 727 P.2d 297 (Alaska 1986), as a case "[a]warding 80% of actual attorney['s] fees for litigation of weak claim which bordered on bad faith and where defendant['s] intransigence required plaintiff to expend considerable efforts on motions and trial practice."  Under these circumstances, the superior court's reference to Embley-Moe's supporting memorandum does not equate to an express finding of bad faith or vexatiousness.  And in the case of a pro se litigant like Plymire, who could not realistically be expected to understand the law as thoroughly or to litigate her case as efficiently as an attorney, we are not inclined to infer a
(continued...)

thus conclude that the award of full fees amounts to an abuse of discretion and must be vacated.

11. For the foregoing reasons, we AFFIRM the judgments against Plymire in all respects except the attorney's fee award to Embley-Moe. We VACATE that attorney's fee award and REMAND for reconsideration of the award in light of this decision.

---

[10](...continued)
finding of bad faith or vexatiousness from the superior court's findings that Plymire's case was weak and that she pursued unnecessary litigation tactics. Cf. Kowalski, 806 P.2d at 1373; see also Beard v. Beard, 947 P.2d 831, 834 (Alaska 1997) ("Conduct justifying an increased award must be such that the parties are prevented from litigating the action on an equal plane.").

Although Embley-Moe cites Blackford v. Taggart, 672 P.2d 888 (Alaska 1983), as analogous to this case, it is readily distinguishable. In Blackford the court awarded $6,000 in prevailing-party fees to the sole defendant in a personal injury action that took a year to prepare, involved numerous depositions, and culminated in a three-day jury trial. See id. at 891. Moreover, the award in Blackford did not purport to be one of full fees and therefore did not require a predicate finding of bad faith or vexatiousness. See id.