Grant C. BAKER, Appellant,

v.

UNIVERSITY OF ALASKA, University of Alaska Fairbanks, and Frank Williams, Appellees.

No. S–9108.

Supreme Court of Alaska.

May 4, 2001.

Grant C. Baker, pro se, Anchorage.

Paul B. Eaglin, University of Alaska Office of the General Counsel, Fairbanks, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

I. *INTRODUCTION*

Grant Baker was unlawfully terminated from his non-tenured engineering professorship at the University of Alaska, Fairbanks (UAF) in 1993. After the superior court in Fairbanks held that the termination violated Baker's contractual rights and remanded the case to UAF for a damages determination, UAF for a damages determination, UAF administratively awarded Baker $48,464 in damages. Baker, who had by then moved to

Anchorage, filed an appeal in the superior court there. He argued that the award was inadequate and that the UAF administrative process had been unfair. Baker also filed a plea for relief from the requirement that he prepay the preparation costs for the administrative record, arguing that protracted litigation, ordinary living expenses, and the costs associated with the termination made it impossible for him to prepay the costs of preparing the record. The superior court rejected this plea and dismissed his appeal for failure to prosecute. Because the superior court erred in denying Baker's plea for relief, we reverse the dismissal of his appeal.

## II. FACTS AND PROCEEDINGS

Grant Baker was a non-tenured engineering professor at the University of Alaska, Fairbanks. After the end of the spring 1993 semester, Baker went commercial fishing. Upon returning in August, he found that the UAF administration had mailed him a notice of non-retention that cited budget constraints as the reason for his non-retention. Under the terms of Baker's contract, the non-retention meant he would remain under contract for a terminal year of employment, after which he would not be rehired. Baker filed a grievance with UAF.

A UAF grievance council heard Baker's case despite an opinion from the University of Alaska General Counsel's office that it had no jurisdiction. The grievance council found in Baker's favor and recommended that he be retained for at least another academic year, that the dean consult with tenured faculty before the non-retention of any other non-tenured faculty, and that negative performance evaluations be removed from Baker's personnel file. The UAF Interim Provost rejected the grievance council's recommendations in whole, finding that Baker's contractual rights were not violated by the non-retention. Baker then filed a lawsuit in the superior court in Fairbanks. After significant pretrial discovery had taken place, the superior court converted the lawsuit to

an administrative appeal in response to a motion by UAF.

The administrative appeal was fraught with problems created by UAF. As the administrative agency, UAF was charged with preparing and maintaining the administrative record.[1] Superior Court Judge Mary E. Greene found that UAF had failed to follow the rules in doing so and rejected UAF's record in its entirety. Judge Greene instead substituted a record prepared by Baker and his attorney. The record preparation, and the motion practice associated with it, substantially increased Baker's litigation expenses.

Baker eventually prevailed before Judge Greene, who found that his contractual rights had been violated because the non-retention notice was untimely. Because a timely notice would have forced UAF to utilize the formerly applicable grievance system, Judge Greene held that Baker was entitled to a grievance proceeding under the former system. Judge Greene then determined that Baker was contractually entitled to at least one year of continuing appointment and one year of terminal appointment and remanded the case to UAF for a determination of damages.

On remand, UAF ruled that Baker was entitled to damages for his salary (plus interest), retirement, benefits, and his moving expenses. UAF denied Baker's other claims of damages.

Baker appealed the UAF administrative decision to the superior court in Anchorage. He argued that the amount of damages awarded was inadequate and that UAF's administrative process had been unfair. Baker was initially represented by private counsel in the appeal, but later represented himself when the litigation exhausted his cash and credit.[2]

After several months of various motions regarding the record, Baker sought an indigency exception from the requirement that he prepay the costs of preparing the administrative record for the appeal. Despite UAF's

---

1. See Alaska R.App. P. 604(b)(1).

2. Baker affied that he incurred attorney's fees and costs of approximately $50,000, of which

$15,000 remained unpaid when he asked the superior court for relief from the prepayment requirement.

failure to rebut any of the factual assertions of Baker's indigency affidavit, the superior court denied his motion. Baker's appeal was then dismissed for lack of prosecution based on his failure to pay for and provide the administrative record. The superior court also awarded $15,000 in attorney's fees to UAF. Baker appeals.

## III. STANDARD OF REVIEW

■ We ordinarily review the dismissal of an administrative appeal for failure to prosecute under the abuse of discretion standard.[3] This case, however, requires an examination of Alaska Rule of Appellate Procedure 604(b)(1)(B)(iv). When interpreting an appellate rule of court, we exercise our independent judgment[4] and "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[5]

## IV. DISCUSSION

*The Superior Court Erred in Dismissing Baker's Appeal for Failure to Prosecute.*

The superior court dismissed Baker's appeal for failure to prosecute under Appellate Rule 511.5 because he did not prepay UAF for the costs of preparing the administrative transcript and record for appeal, as required by Appellate Rule 604(b)(1)(B)(iv). The question before us is whether the superior court should have accommodated Baker's requests for relief from this prepayment requirement. We emphasize that this case does not require us to determine whether Baker should be absolved of his duty to pay for preparing the record and transcript, just whether he must pay in advance.

1. *Appellate Rule 604(b)(1)(B)(iv) ordinarily requires advance payment for preparation of the administrative record, but does not provide a standard for relieving the appellant from this requirement.*

■ Baker contends that the superior court erred by not relieving him of the prepayment requirement when he made a factual showing of indigence. But Appellate Rule 604(b)(1)(B)(iv) does not provide a standard or test for the superior court to apply when it considers motions for hardship relief; instead, it establishes that the appellant shall pay transcript and file preparation costs and *may* be required to make advance payment:

> In the absence of an agreement between the parties or an order of the court to the contrary, all reasonable costs incurred in connection with preparing the transcript and the court's copy of the agency file shall be borne by the appellant. The preparing agency may require advance payment of the costs as reasonably estimated by the agency.[6]

Nothing in this rule suggests that a court's discretion to relax the rule's advance payment requirement hinges on a strict showing of indigence. The rule recognizes general judicial authority to enter an order "to the contrary" of the usual advance payment arrangement, and places no restrictions on the court's power to exercise that authority. This vests the superior court with broad discretion to grant relief upon a showing of any good reason to avoid rigidly enforcing the advance payment requirement. While indigence is certainly sufficient for relief, it is not in all cases necessary.

2. *Appellate Rule 604(b)(1)(B)(iv) allows the superior court to deviate from ordinary procedure upon a showing of good cause.*

■ Appellate Rule 604(b)(1)(B)(iv) does not mention indigence, or any other substantive factor, in granting discretion to the superior court to issue an order relieving an appellant from the prepayment requirement. But we have recently reaffirmed the princi-

---

**3.** Appellate Rule 511.5 allows an administrative appeal to be dismissed for failure to prosecute. *See Geczy v. State, Dep't of Natural Resources*, 924 P.2d 103, 104 (Alaska 1996) (citing *Cowitz v. Alaska Workers' Comp. Bd.*, 721 P.2d 635, 638 n. 2 (Alaska 1986)).

**4.** *Cf. Ford v. Municipality of Anchorage*, 813 P.2d 654, 655 (Alaska 1991) (holding that in cases that

"involve the interpretation of a civil rule, we exercise our independent judgment").

**5.** *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**6.** Alaska R.App. P. 604(b)(1)(B)(iv).

ple that "the size of a party's bank account"[7] should not "foreclose [that] party's opportunity to be heard."[8] Accordingly, we interpret Rule 604(b)(1)(B)(iv) to allow a superior court to relieve the appellant of the prepayment requirement for good cause.[9] Good cause in this context consists of a factual showing by the appellant of a substantial hardship. We now turn to the specific circumstances of Baker's case.

3. *Baker showed the existence of substantial hardship sufficient to support relief from the Rule 604(b)(1)(B)(iv) prepayment requirement.*

■ Based on our interpretation of Rule 604(b)(1)(B)(iv), we conclude that Baker has shown the existence of substantial hardship that is sufficient to support a grant of relief from prepayment.

First, Baker was illegally terminated. No one now disputes the illegality of UAF's conduct that instigated these proceedings.

Second, UAF's conduct in the first administrative appeal caused a substantial increase in Baker's litigation expenses. UAF failed to follow its own rules on record preparation, resulting in the superior court's rejection of UAF's record in its entirety and the substitution of a record prepared by Baker and his attorney at substantial additional expense to Baker.

Third, Baker's case cost him more in attorney's fees (over $50,000) than he was paid in damages ($48,464).[10]

Fourth, by the time Baker's second administrative appeal was underway, he had incurred a debt that precluded his ability to secure loans to cover his expenses. Also, his expenses often exceeded his income. These expenses were not frivolous: they were incurred, for the most part, in moving his family from Fairbanks to Anchorage to obtain employment following his illegal termination in Fairbanks and to cover the costs of this litigation.

And fifth, Baker was a University of Alaska employee. Given the relationship between the parties in this case, it is reasonable to conclude that had the court relieved Baker of the prepayment requirement, UAF was in a position to protect itself in terms of recovering the costs of record preparation in the event UAF prevailed in the dispute.

These circumstances establish good cause to grant Baker relief. His affidavit showing inability to raise the $3,500 necessary to prepay the record preparation costs, the submission of a financial statement consistent with that affidavit, and the failure of UAF to refute the existence of substantial hardship lead to our conclusion today that relief from prepayment should have been granted. The superior court focused only on Baker's income and did not consider other relevant factors in making its determination. Consideration of all relevant factors leads us to conclude that Baker showed that substantial financial hardship precluded his pre-payment of record preparation costs, and that the university did not rebut that showing.

UAF argues that our holding in *Jordan v. Jordan*[11] controls in this case. But UAF misconstrues the facts and holding of *Jordan.* Unlike the appellant in *Jordan,* Baker did not ask that the state pay for an attorney

---

7. *Peter v. Progressive Corp.,* 986 P.2d 865, 872 (Alaska 1999) (examining potential litigation-precluding effect of appointing expensive discovery master in litigation involving plaintiffs of "modest means" (quoting *Malvo v. J.C. Penney Co.,* 512 P.2d 575, 587 (Alaska 1973))).

8. *Id.* at 873 (quoting *Malvo,* 512 P.2d at 587).

9. We decide only that the circumstances of this case warrant relief from prepayment, not from the underlying obligation to pay the cost of record preparation under Rule 604. Accordingly, criminal indigency standards relied on by the dissent are of limited relevance to this case. Additionally, Baker was charged with no crime;

he was defending his rights as an employee who had been wrongfully terminated and who, as a result, incurred substantial financial hardship warranting relief from prepayment.

10. Baker was certainly entitled to hire and pay for an attorney to help him defend his rights as an employee; he was clearly harmed by UAF's illegal conduct. Also, contrary to the dissent's assertion, he may not have had much choice as to whether he could set aside funds for the record preparation instead of paying his attorney's fees. Those fees may have been subject to an attorney's lien under AS 34.35.430.

11. 983 P.2d 1258 (Alaska 1999).

or other litigation costs. Baker merely sought relief from the requirement that he prepay record preparation costs. In *Jordan*, we concluded that the appellant was not indigent because "the Jordans had $200,000 to $300,000 in marital assets" and that "sufficient assets existed for [him] to pay for an attorney without encumbering the family home." [12] By contrast, the Baker family had a greater amount of debt than assets, and no non-essential assets that could be encumbered or liquidated to pay litigation costs. More importantly, Baker appears to have had necessary monthly expenses that were at least equal to, and at times exceeded, his family's monthly income. Finally, Baker was unable to secure private lines of credit. These facts distinguish Baker's situation from the facts underlying our holding in *Jordan*. Accordingly, *Jordan* does not control Baker's request for hardship relief.

The superior court failed to consider indicators of substantial hardship other than Baker's salary. Record evidence shows that Baker faced substantial financial hardship. The superior court erred in finding he was not entitled to relief from the requirement that record preparation costs be prepaid.[13]

## V. CONCLUSION

The superior court improperly denied Baker relief from the administrative record preparation prepayment requirement of Appellate Rule 604(b)(1)(B)(iv), which led to the dismissal of Baker's appeal without addressing the merits. Because the superior court erred in this regard, we REVERSE and REMAND for proceedings on the merits.

FABE, Justice, not participating.

MATTHEWS, Chief Justice, dissenting.

Grant Baker filed this administrative appeal on August 11, 1997. On August 14, 1997, he was notified that he would be liable for record preparation costs and that the University could require the prepayment of the costs. The costs amounted to some $3,500. Some weeks later he received a lump sum settlement of approximately $48,000 from the University. This was in addition to his regular annual salary of more than $50,000.

Baker's obligation to prepay record preparation costs was actively litigated. Baker's counsel filed many pleadings on this subject and the superior court made three separate rulings—on May 20, June 23, and September 15, 1998, all affirming that Baker had the obligation to prepay record preparation costs. After his attorney withdrew in October of 1998, Baker made still another motion seeking waiver of his prepayment obligation. This was denied on December 1, 1998. Finally, on March 17, 1999, the superior court entered an order giving Baker ten days more to prepay the costs. This order warned Baker that if the costs were not paid by then an order of dismissal would be entered. Baker did not pay the costs and on April 21, 1999, the court dismissed the appeal in a five-page order explaining the history of this case.

In my opinion the court did not abuse its discretion in declining to relieve Baker of his obligation to prepay costs. The record shows that Baker had adequate income to prepay $3,500 in record preparation costs. He received income of more than $120,000 during the pendency of his appeal in the superior court. Further, he had adequate time to budget for the payment of the costs. More than eighteen months elapsed from the time he was first notified of his obligation to pay until the appeal was dismissed. His nonpayment seems to have resulted from choices he made that were not spurred by strict economic necessity. He decided to pay to litigate whether he had an obligation to prepay, rather than simply to prepay. And he decided to use the $48,000 lump sum which he received during the pendency of the appeal to pay counsel and reduce the debt on his credit cards.[1] Both Baker and his attor-

---

**12.** *Id.* at 1263.

**13.** Since we remand to the superior court for an appeal on the merits based solely on the failure to grant relief from the prepayment requirement,

we do not reach the other issues presented by Baker.

**1.** The record does not reveal how the $48,000 was allocated as between attorney's fees and costs and credit card debt. But in March of

ney knew that he would have to prepay record preparation costs and he could easily have set aside funds for this purpose from the lump sum payment.

One measure of the substantial financial hardship which will entitle a litigant to relief because of inability to pay the normal costs of litigation is contained in Criminal Rule 39.1. Defendants accused of crime are eligible for court-appointed counsel if their total financial resources are not sufficient to pay for counsel after "allowable household expenses" are deducted.[2] Courts are authorized to assume that "allowable household expenses" are approximately equal to the adjusted federal poverty guidelines for the defendant's household.[3] For a family of five—Baker's family size—living in Anchorage, this figure is $24,400.[4] Baker has annual financial resources far exceeding this amount. And Baker is pursuing a civil action for his personal financial benefit. It is hard to see why he should be entitled to a more relaxed standard of financial hardship than those accused of crime.

For the above reasons, I would hold that the superior court did not abuse its discretion in declining to relieve Baker of his obligation to pay in advance for the preparation of the administrative record.

1998, after the $48,000 payment had been spent, Baker filed an affidavit indicating that total attorney's fees and costs incurred were approximately $50,000, and of this sum about $15,000 remained unpaid. This indicates that no more than $35,000 of the $48,000 was paid to Baker's attorney, and that at least $13,000 was available to meet other obligations.

**2.** See Alaska R.Crim. P. 39.1(b)(1).

**3.** See Alaska R.Crim. P. 39.1(h)(2).

