**ALASKA STATE HOUSING
AUTHORITY, Appellant,**

v.

**RILEY PLEAS, INC., Appellee.**

No. 3208.

Supreme Court of Alaska.

Dec. 1, 1978.

Kenneth P. Eggers, Groh, Benkert & Walter, Anchorage, for appellant.

R. Everett Harris, Jensen, Harris, Roth, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ.

BURKE, Justice.

This is an appeal by the Alaska State Housing Authority (hereinafter ASHA) from a judgment of the superior court confirming an arbitration award.

In the superior court, ASHA filed simultaneous applications to vacate and to modify the award under AS 09.43.120 and 130.[1]

---

1. Those sections provide:

*Vacating an award.* (a) On application of a party, the court shall vacate an award if

(1) the award was procured by fraud or other undue means;

(2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of a party;

(3) the arbitrators exceeded their powers;

(4) the arbitrators refused to postpone the hearing upon sufficient cause being shown for postponement or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 50 of this chapter, as to prejudice substantially the rights of a party; or

(5) there was no arbitration agreement and the issue was not adversely determined in proceedings under § 20 of this chapter and the party did not participate in the arbitration hearing without raising the objection.

(b)The fact that the relief is such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

(c) An application under this section shall be made within 90 days after delivery of a copy of the award to the applicant. However, if the application is predicated upon corruption, fraud or other undue means by either the opposing party or an arbitrator, it shall be made within 90 days after the grounds are known or should have been known.

(d) In vacating the award on grounds other than those stated in (a)(5) of this section the court may order a rehearing before new arbitrators chosen as provided in the agreement, or in the absence of a provision in the agreement, by the court in accordance with § 30 of this chapter, or, if the award is vacated on grounds set out in (a)(3) or (4) of this section, the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with § 30 of this chapter. The time within which the agreement requires the award to be made is applicable to the rehearing and commences from the date of the order.

(e) If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award.

*Modification or correction of award by court.* (a) On application made within 90 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award if

(1) there was an evident miscalculation of figures or an evident mistake in the description of a person, thing or property referred to in the award;

(2) the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) the award is imperfect in a matter of form not affecting the merits of the controversy.

(b) If the application is granted, the court shall modify and correct the award to effect its intent and shall confirm the award as modified and corrected. Otherwise, the court shall confirm the award as made.

(c) An application to modify or correct an award may be joined in the alternative with an application to vacate the award.

The award granted Riley Pleas, Inc., appellee, was $366,203.00 plus $37,470.00 in attorney's fees and pre-award interest at eight percent. Pleas' claim was divided into twelve parts totaling $502,877.00. The award was in a lump sum, making no allocation among the components of the claim. Upon ASHA's motion the court entered an order for clarification requiring the arbitrators to make such an allocation. In response the arbitrators submitted a work sheet prepared by them on the final day of their deliberations which was keyed to Pleas' separate claims. The work sheet contained an addition error. The total award intended by the arbitrators, as corrected, was $408,782.00 rather than $366,-203.00. After oral argument the superior court entered a formal order and judgment on October 19, 1976, which (1) confirmed the arbitrators' corrected award of $408,-782.00; (2) struck the arbitrators' award of attorney's fees; (3) changed the rate of pre-award interest from eight percent to six percent and determined that that rate should run until the date of oral argument before the court, when the court orally announced its decision, August 17, 1976; (4) awarded attorney's fees under Civil Rule 82 to Pleas of $34,863.40; and (5) awarded interest at eight percent on the total judgment from August 17, 1976, until paid.

On appeal, ASHA makes multiple claims of error. The following facts are relevant to these claims. In 1972, ASHA solicited a bid for construction of a nine story apartment building in Juneau. Pleas was the low bidder. After the bid opening but before the award of the contract, ASHA's representatives told Pleas that it did not have enough money to do the job and somehow the amount of Pleas' bid would have to be reduced. Various alternatives were discussed and ASHA's engineers suggested that Pleas look into the cost of using a system of precast panels for floors and walls instead of the originally designed method of pouring concrete in place. Pleas did so and brought information from a manufacturer of precast panels to ASHA's technical consultants. There was evidently a general consensus of opinion among ASHA's consultants that a precast system was feasible and would be more economical. At that point Pleas was awarded the contract for its original bid price.[2] The award was stated by ASHA to be "subject to your submittal of an alternate system for the superstructure." After the award ASHA's engineers and Pleas' president together drafted a letter signed by Pleas, directed to ASHA, formally proposing the change to precast walls and floors which was to result in a reduction in the contract price of $63,-000.00. The letter stated that the proposed system would "meet all code requirements." In response to the letter ASHA issued a change order, accepted by Pleas on October 3, 1972, adopting the precast method for floors and walls, specifying the $63,000.00 reduction in contract price and stating, "All claims against the Alaska State Housing Authority which are incidental to or as a consequence of the aforementioned change are satisfied." At the time of the issuance of the change order, the modification had not been designed. ASHA's architects and engineers were to do this and it was contemplated that the final plans would be available within six weeks. As it turned out the final plans were not completed until the end of January, 1973. They were then sent to a City of Juneau building official for issuance of a building permit. The Juneau official sent them to a California engineering firm for review. That firm did not agree with the design changes and declined to make a final review. The Juneau building official then forwarded the plans to the International Conference of Building Officials (ICBO) for analysis. That organization had promulgated the Uniform Building Code, which was then in effect in Juneau. ICBO after making an analysis of the plans directed that horizontal steel reinforcing bars be added to each of the panels. This design change was incorporated into the plans and the City of Juneau thereafter issued a building permit on June 8, 1973.

2. $3,108,530.00.

## I

Pleas' claim against ASHA includes an item of $116,837.00 for added labor and costs due to the design changes to the precast system required by ICBO. It was actually awarded $64,885.00 for this item. In addition, Pleas claimed costs of $282,022.00 and was awarded by the arbitrators $250,134.00 for delay in obtaining the building permit. This delay was due primarily to the problems relating to the precast system.[3]

ASHA claims on appeal that the arbitrators did not give a "reasonably possible" interpretation to the language of the change order which stated prospectively that all claims against ASHA relating to the change were satisfied. ASHA contends that where arbitrators' construction of a contract is not reasonably possible the arbitrators have "exceeded their powers," a statutory ground for vacating an award.

 AS 09.43.120 and AS 09.43.130 define the superior court's power to review and either vacate or modify an arbitration award. *Anchorage Medical and Surgical Clinic v. James*, 555 P.2d 1320, 1321 n.3 (Alaska 1976). One ground upon which an award can be vacated is that the arbitrators have acted in excess of their powers.[4] If the arbitrators have decided an issue which is not arbitrable under the contract to arbitrate, they have exceeded their powers. *University of Alaska v. Modern Construction, Inc.*, 522 P.2d 1132, 1136–37 (Alaska 1974). However, there are no statutory grounds for review of an arbitrator's determination as to the meaning of contract provisions which do not pertain to the issue of arbitrability. We are, therefore, without authority to do so.

Our holding that an arbitrator's misconstruction of a contract is not open to judicial review, except on questions of arbitrability, is in accordance with what we perceive to be the weight of authority from other jurisdictions having statutes similar to ours.[5] We held in *University of Alaska v. Modern Construction, Inc.*, that arbitrators are not required to follow applicable rules of law unless commanded to do so by the arbitration agreement itself. Since errors of law are not reviewable, it is an *a fortiori* conclusion that errors in contract interpretation are not. Questions of contract interpretation are matters of law only in the sense that judges rather than jurors are thought to be better able to decide them. In fact, contract interpretation issues often involve essentially factual questions of the intention of the parties, including matters of trade usage; they are, therefore, clearly within the arbitrator's domain.[6]

## II

 ASHA's next claim of error is that several items of the award were procured by fraud and undue means which are statutory grounds for vacating an award under AS 09.43.120(a)(1). In reviewing this aspect of ASHA's appeal, it is evident that the essence of its claim is that the arbitrators made gross errors in determining the facts. ASHA, however, cites no authority for its contention that the "fraud or other undue means" standard of the statute authorizes review for gross errors. We hold that it does not.

There is a substantial difference between procurement of an award by fraud or other undue means and an award in which the arbitrators have allegedly made large mis-

---

3. Some minor delays may have been caused by other factors, such as resolution of zoning difficulties.

4. AS 09.43.120(a)(3), quoted in note 1 *supra*.

5. *See Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1960); *Mutual Benefit Health & Acci-*

dent Ass'n v. United Cas. Co., 142 F.2d 390, 393 (1st Cir.), *cert. denied*, 323 U.S. 729, 65 S.Ct. 65, 89 L.Ed. 585 (1944); Note, *Judicial Review of Arbitration Awards on the Merits*, 63 Harv.L. Rev. 681, 686 (1950).

6. *See* Note, 63 Harv.L.Rev., *supra* note 5, at 686.

takes. The former instances connote affirmative wrongdoing by a party to the arbitration and often by an arbitrator; gross error carries no such connotation. Moreover, fraud or undue means in the procurement of an award does not require a review on the merits of the controversy; a review for gross errors is a review on the merits. ASHA refers us to *Nizinski v. Golden Valley Electric Association, Inc.*, 509 P.2d 280 (Alaska 1973), in which we indicated approval of the gross error standard for review of an arbitration conducted under a labor-management contract. However, the arbitration in *Nizinski*, because it was a labor-management dispute, was expressly excluded from our Arbitration Act by the terms of AS 09.43.010 and the standard of review we expressed there is not duplicated in the Act.

A practical difficulty also stands in the way of reviewing an arbitration award to determine if it is supported by evidence. Arbitration proceedings are not required by our statutes or by the rules of the American Arbitration Association to be conducted on the record. Where the proceedings are not in fact recorded, it is not possible to review them for evidentiary sufficiency.

### III

ASHA also contends that the award should be vacated under the evident partiality standard of AS 09.43.120. Two claims are made, one with respect to arbitrator Stetson and one with respect to arbitrator Chandler.

With respect to the alleged partiality of Stetson, ASHA submitted affidavits of its principal engineer and principal architect claiming that Stetson had stated to them at a social occasion after the arbitration proceedings had been recessed for the day, "You guys [ASHA] haven't presented your case yet, but ASHA has been so _____ up for years, you guys don't have a chance." Stetson is also alleged to have said: "Every incompetent political hack winds up in ASHA. _____ _____ is a good example."

■ In reviewing this claim the superior court determined that ASHA had waived its right to object to the alleged bias of Stetson because it did not raise the matter at the arbitration hearing. We believe the trial court was correct in finding a waiver. ASHA could have challenged the neutrality of Stetson the next day when proceedings resumed but chose not to do so, evidently because it felt that the challenge would be ineffective and would only serve to worsen its chances of obtaining a favorable result. A party may not obtain a second hearing by silently collecting his objections for the contingency of a loss in the first one. "Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection." *Ilos Shipping & Trading Corp. S.A. v. American Anthracite & Bituminous Coal Corp.*, 148 F.Supp. 698, 700 (S.D.N.Y.1957). Here, a prompt objection might have resulted in the disqualification of Stetson. The arbitration could then have proceeded with the remaining two arbitrators. ASHA's failure to object thus deprived the arbitration panel of the opportunity to remedy the situation which ASHA now claims requires an entire new hearing.

■ We also reject ASHA's claim concerning arbitrator Chandler. Before the arbitrators were selected each was required to disclose "any circumstances likely to create a presumption of bias or which might disqualify him as a neutral impartial arbitrator." [7] Chandler disclosed that Dale Martin, one of the attorneys for Pleas, represented him personally in certain litigation. Chandler did not disclose that he had a one-third interest in a partnership called the Belle Vue Associates and that Mr. Martin's law firm, Barokas and Martin, had performed legal services for the partnership. Apparently an authorized agent of the partnership had consulted Barokas and Martin. Mr. Chandler had not done so on behalf of the partnership and the record is

7. Rules of the Am. Arb. Ass'n, Construction Industry Arbitration § 18 (1974).

silent as to whether or not he was aware of the agent's consultation. We do not believe that Chandler's non-disclosure of this relationship is material in light of the fact that ASHA was willing to accept Chandler knowing that Martin was his personal counsel.

## IV

ASHA claims that the arbitrators erred in awarding interest at twelve percent on late progress payments and retainage. The interest awarded on those items amounted to $17,830.00. The contract between the parties provided that any moneys not due when paid would bear interest "at the legal rate in force." The legal rate of interest in Alaska, with exceptions not here relevant, at the time in question was six percent, and no higher rate was permitted. AS 45.45.010(a) and AS 45.45.020. The award of twelve percent interest was therefore an express violation of law. The award must be modified to reflect interest at six percent on the items under discussion.

## V

ASHA also points out an evident miscalculation in interest which requires modification. The unpaid balance on the contract as of April 12, 1974, was $14,970.00. The arbitrators awarded interest on this from that date until September 3, 1975. However, the arbitrators also awarded interest on the total award which included the $14,970.00 balance due from September 27, 1974, through September 27, 1975. The two awards of interest overlap during the period September 27, 1974, through September 3, 1975, producing a duplication which requires correction.

## VI

The superior court awarded $34,-863.40 to Riley Pleas as attorney's fees. In doing so it evidently followed the "without trial" schedule of Civil Rule 82(a). We believe the award is manifestly unreasonable. It exceeds the attorney's fees actually incurred by Riley Pleas before the superior court. The attorney's fees incurred for the arbitration hearing may not be taken into account because Civil Rule 82 only applies to "costs of the action" not attorney's fees incurred in the conduct of a prior arbitration. This interpretation is consistent with AS 09.43.100, which expressly excludes attorney's fees as an allowable item of costs in an arbitration award, and with AS 09.43.-140 which provides that costs of an application to the court to confirm, vacate, modify or correct an arbitrator's award and of the "proceedings *subsequent* to the application" may be awarded by the court. *See Harold's Trucking v. Kelsey*, 584 P.2d 1128, Op. No. 1739 (Alaska 1978).

The purpose of awarding attorney's fees under Rule 82 is to afford partial compensation to a prevailing party for the legal expenses necessitated by the court proceeding. *Malvo v. J. C. Penney, Inc.*, 512 P.2d 575 (Alaska 1973). We recognized in *Malvo* that a judge might well be justified in awarding full attorney's fees where there is evidence that the losing party did not have a good faith claim or defense. *Id.* at 588. Here, however, there is no such evidence and the award must be reduced to a reasonable sum in light of the purpose of Civil Rule 82.

## VII

ASHA's final contention is that the superior court erred in ordering that its judgment bear interest at the rate of eight percent per annum from August 17, 1976, the date upon which the court announced its decision. Its attack is on two grounds. First, it contends that interest on the judgment should accrue at the rate of six percent per annum, rather than eight percent. Second, it argues that, even if the appropriate rate is eight percent, the higher rate of interest should not have begun to accrue until October 19, 1976, the date upon which the court's written order and judgment was filed, rather than from the date it orally announced its decision. We believe that ASHA's first contention is correct and, therefore, will not address the second.

Paragraph 7.9.1 of the contract between ASHA and Riley Pleas provided: "Any monies not paid when due to either party under this contract shall bear interest at the legal rate in force at the place of the project." Before September 12, 1976, AS 45.45.010(a) stated, in pertinent part: "The [legal] rate of interest in the state is six percent a year and no more on . . . money due or to become due where there is a contract to pay interest and no rate is specified." The statute was amended, effective September 12, 1976, but the quoted language remained the same.[8]

AS 09.30.070 provides:

*Interest on Judgments.* The rate of interest on judgments and decrees for the payment of money is eight per cent, ex*cept that a judgment or decree founded on a contract in writing, providing for the payment of interest until paid at a specified rate not exceeding the legal rate of interest for that type of contract, bears interest at the rate specified in the contract if the interest is set out in the judgment or decree, but in no event may* it be more than 10 per cent a year. [Emphasis added.]

Appellant contends that the exception provision in AS 09.30.070 relating to a "judgment or decree founded on a contract in writing" applies to the award of interest in this case, and that under the applicable statutes governing the legal rate of interest on money due, the judgment should bear interest at six percent. We agree.

The superior court judgment, we believe, was not a "judgment for the payment of money" within the true meaning of that phrase as used in AS 09.30.070. It merely confirmed ASHA's liability under the contract and therefore was "a judgment . . . founded on a contract in writing, providing for the payment of interest" at the legal rate. Thus, we hold that the judgment should have been ordered to bear interest at the rate of only six percent per annum.

---

8. Section 1, ch. 159, SLA 1976. The amendment did change one word in the quoted portion of the statute: "where" in the original was

The judgment of the superior court is AFFIRMED in part and REVERSED in part. The case will be REMANDED to that court for entry of an amended judgment, conforming to the views expressed in this opinion.

MATTHEWS, J., not participating.

changed to "when." This change, however, did nothing to alter its meaning.