**INTEGRATED RESOURCES EQUITY CORPORATION, Integrated Resources, Inc. and Gary Spring, Appellants,**

v.

**FAIRBANKS NORTH STAR BOROUGH, Appellee.**

**Gary SPRING and Integrated Resources Equity Corporation, Appellants,**

v.

**Josefa WORTMAN, Juanita Helms, Jill Steorts and Hartford Accident and Indemnity Company, Appellees.**

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellant.**

v.

**Gary SPRING and Integrated Resources Equity Corporation, Appellees.**

**Josefa WORTMAN and Juanita Helms, Appellants,**

v.

**Gary SPRING and Integrated Resources Equity Corporation, Appellees.**

Nos. S–2936, S–3058, S–3115 and S–3144.

Supreme Court of Alaska.

Sept. 7, 1990.

Rehearing Denied Oct. 9, 1990.

Constance Cates Ringstad and Paul A. Barrett, Call, Barrett & Burbank, Fairbanks, for appellants Integrated Resources Equity Corp., Integrated Resources, Inc. and Gary Spring.

James D. DeWitt and Colleen J. Moore, Guess & Rudd, Fairbanks, for appellees Wortman and Helms.

Daniel R. Cooper, Jr., Bradbury, Bliss & Riordan, Fairbanks, for appellee Steorts.

William M. Bankston, Bankston, McCollum & Fossey, P.C., and Peggy Alayne Roston, Anchorage, for appellee Hartford.

Before MATTHEWS, C.J., and BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

### FACTS COMMON TO ALL CASES

The Fairbanks North Star Borough desired to make a short-term investment of some 20.3 million dollars. The Borough issued an invitation for investment bids limiting investments to "time certificates of deposit; and bonds, notes and other obligations of the federal or state governments." Integrated Resources Equity Corporation, a stock brokerage firm, responded to the invitation by offering shares in the Lord Abbett U.S. Government Fund, a mutual fund which invests solely in U.S. government obligations.

At the bid opening on May 14, 1986, the Integrated bid was the highest received by the Borough. Because of the objection of at least one member of the local investment community, however, the Borough did not immediately invest in the Lord Abbett fund. Borough officials met with Gary Spring, Integrated's agent in Fairbanks, to learn more about the mutual fund and to determine whether the investment was permissible under a Borough ordinance. Following this meeting, the Borough purchased the mutual fund. Debate about the wisdom and legality of this investment continued, however, and ultimately on June 2, 1986 the Borough sold the fund at a principal loss of some $570,000.

The Borough filed for arbitration with the National Association of Securities Dealers. Before the arbitration hearing, Integrated[1] sued the Borough officials responsible for making the investment, Borough Mayor Juanita Helms, Borough Chief Financial Officer Josefa Wortman, and Jill Steorts, Borough Revenue Supervisor, for contribution. In addition, Hartford Accident and Indemnity Company was included as a defendant based on the public official bonds it had posted covering certain conduct of Helms and Wortman. The law firm of Bankston, McCollum & Fossey represented the Borough in arbitration proceedings and initially represented all of the defendants in the contribution action. An arbitration hearing was held and the arbitrators awarded the Borough $336,738, without explaining the basis for the award.

### FACTS PERTAINING TO THE CONFIRMATION CASE (S–2936)

The Borough applied to the superior court to have the arbitration award confirmed pursuant to AS 09.43.110. Integrated objected on several grounds, but its objections were rejected and the award was confirmed. The superior court granted the Borough attorney's fees in the sum of $24,704.28. On appeal, Integrated challenges both the confirmation of the award and the grant of attorney's fees. We affirm the confirmation of the award but reverse on the issue of attorney's fees.

### DISCUSSION CONCERNING THE CONFIRMATION CASE

Integrated raises two grounds as a challenge to the confirmation of the award by the superior court. They are: (1) "[t]he arbitrator committed prejudicial misconduct by consulting with an outside source

---

1. The named respondents were Integrated Resources Equity Corporation, Integrated Resources, Inc. and Gary Spring, hereinafter referred to collectively as Integrated.

and announcing the evidence so obtained at the arbitration hearing"; (2) "[t]he court erred by confirming the arbitration award without requiring that the Borough's counsel explain the resolution of [a] conflict [of interest] in the absence of indemnity agreements and the disappearance of the Wortman letter and Steorts' note".

### A.

■ The first argument relates to an incident that happened during the arbitration hearing. One of the arbitrators on the five-person panel engaged in the following colloquy with Spring:

### EXAMINATION BY
### ARBITRATOR VIOLICH

ARBITRATOR VIOLICH: I have one more question.

Q. I had a question earlier about your research regarding volatility of the fund. You indicated that your research told you that you had about one percent variation six months prior to submitting the fund for bid to the Borough. What level would you consider to be volatility, would you consider to be, if not suitable for investment, two percent, three percent?

A. I guess probably anything greater than five percent.

Q. Five percent volatility. So you would put them at risk for $1 million on a $20 million fund?

A. Maybe I didn't understand the question.

Q. You said five percent variability. If it dropped five percent, then this Borough would have an opportunity of losing $1 million.

A. Based upon what Mr. Dow told me, he suggested that the fund would increase in value because interest rates would continue to come down.

Q. So it wasn't your research, it was Mr. Dow's research?

A. Yeah.

Q. *Had you done some research you would have found that November 14th of 1985 the fund was 2.85 percent below the level that it was on the date that you purchased the securities.*

A. 2.85 percent or cents?

Q. Percent not cents.

A. (Nods head)

[Emphasis added.]

It was apparent from the emphasized question of arbitrator Violich that he had made an *ex parte* inquiry into the price swings of the mutual fund. Counsel for Integrated did not object to the question, or to the fact that the arbitrator had made the inquiry, at any time during the arbitration hearing.

We do not decide whether arbitrator Violich's inquiry amounted to prejudicial misconduct[2] because counsel's failure to object amounts to a waiver of the right to raise this point. Integrated argues that an objection should not be required as it probably would have only served to have alienated arbitrator Violich and the other four arbitrators. We rejected a similar argument in *Alaska State Housing Authority v. Riley Pleas, Inc.* 586 P.2d 1244, 1248 (Alaska 1978).

In *Riley Pleas,* one of the arbitrators stated to appellants' counsel during a recess: "You guys haven't presented your case yet, but ASHA has been so ____ up for years, you guys don't have a chance.... Every incompetent political hack winds up at ASHA. ____ ____ is a good example." *Id.* at 1248. When the arbitration reconvened, no objection was made to the neutrality of the arbitrator who had made these statements, evidently because counsel felt that "the challenge would be ineffective and would only serve to worsen [ASHA's] chances of obtaining a favorable result." *Id.* We upheld the trial court's finding that ASHA had waived its right to object on the grounds of bias of the arbitrator. *Id.*

A party may not obtain a second hearing by silently collecting his objections for the contingency of a loss in the first one.

---

**2.** Under AS 09.43.120(a)(2), an arbitration award shall be vacated if an arbitrator has been guilty of "misconduct prejudicing the rights of a party."

Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection. Here, a prompt objection might have resulted in the disqualification of [the arbitrator]. The arbitration could then have proceeded with the remaining two arbitrators. ASHA's failure to object thus deprived the arbitration panel of the opportunity to remedy the situation which ASHA now claims requires an entire new hearing.

*Id.*, (citation omitted).

Similarly, in the present case, counsel's failure to object to the *ex parte* inquiry conducted by Violich deprived the panel of the opportunity to provide a remedy. If an objection had been made, the remaining four arbitrators might have required Violich to disqualify himself.[3] More likely, the arbitrators would have permitted an inquiry into the source and accuracy of Violich's information. If Violich was merely expressing accurate market information, his conduct would not be considered prejudicial as such information was relevant[4] and is not hearsay under Evidence Rule 803(17).[5] If, however, the information was inaccurate or based on suspect sources, an examination of the arbitrator, taken together with whatever follow-up inquiry was required, could have revealed these deficiencies and eliminated any prejudice.

■ Integrated also argues that objections should not be required where an arbitrator had "in effect offer[ed] testimony." It cites Evidence Rule 605 which prohibits a judge from testifying at a trial at which he

is presiding. This rule states that "no objection need be made in order to preserve the point."

However, the commentary to the rule explains that the rule is a response to two concerns: "(1) Someone must rule on objections while the judge is testifying. (2) The jury may favor the side with whom the judge is identified." Neither of those concerns are present here given the presence of the other four arbitrators. They would have been able to respond to any objection made regarding the conduct of the fifth. Further, there would be no particular reason for them to side with the Borough simply because one of their members had improperly introduced evidence.

### B.

■ Integrated's second argument arises from the fact that before the arbitration hearing, Integrated filed suit against Borough officials Wortman, Helms and Steorts for contribution. The same counsel who represented the Borough in arbitration defended the officials in the suit. According to Integrated, this created a conflict of interest because only if the Borough was successful in obtaining an award in arbitration could there be a claim against the officials in the contribution case. Believing therefore that there must be an indemnification agreement between the Borough and the officials, Integrated sought production of documents both in the lawsuit and in the arbitration to ascertain the terms of any such agreement. Indemnification was denied by the Borough as of the time of the arbitration hearing. Subsequently, the Borough passed an ordinance which seems to provide retroactively for indemnity of

---

**3.** AS 09.43.050(3) permits an arbitration to continue if "an arbitrator for any reason ceases to act."

**4.** Integrated states: "The history of this mutual fund's price stability was critical evidence as to whether this investment was suitable for public funds." It is remarkable that Integrated offered only Spring's understanding of the fund's price variations not the actual closing net asset values quoted daily for a period before the bid.

**5.** Evidence Rule 803(17) states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(17) Market Reports, Commercial Publications. Market quotations, tabulations, lists, directories, codes, standards, or other published compilations, generally used and relied upon by the public or by persons in particular occupations.

the officials.[6] In addition, Integrated has discovered some evidence which may be construed to suggest that the officials had some arrangement concerning indemnity at the time of arbitration.[7] The point of Integrated's argument is that if the Borough had acknowledged an indemnity agreement in favor of the officials, Integrated could have shown that the officials were biased in favor of the Borough by reason of the indemnity agreement.

However, with or without an indemnity agreement, the bias of the officials, as the only actors for the Borough in this controversy is obvious. They would naturally believe their conduct was appropriate and accordingly testify favorably to the Borough. Thus, even assuming that there was an indemnity agreement which was suppressed, it would have been at most cumulative evidence of bias or interest.

### C.

▉ Integrated's only sound objection concerns the award of attorney's fees. The trial court's award, $24,704.28, was based on the without trial schedule of Civil Rule 82(a)(1), predicated on the amount awarded at arbitration. This was erroneous. As we stated in *Riley Pleas:*

> Civil Rule 82 only applies to "costs of the action" not attorney's fees incurred in the conduct of the prior arbitration. This interpretation is consistent with AS 09.-43.100, which expressly excludes attorney's fees as an allowable item of costs in an arbitration award, and with AS 09.43.140 which provides that costs of an application to the court to confirm, vacate, modify or correct an arbitrator's award and of the "proceedings *subsequent* to the application" may be awarded by the court.

586 P.2d 1244, 1249 (emphasis in original) (citations omitted). Thus the award of attorney's fees must be vacated. The Borough, as prevailing party, is entitled to reasonable attorney's fees as partial compensation only for fees incurred in the confirmation proceeding. *Id.; see* Civil Rule 82(a)(2). A remand is necessary so that this award can be made.

## FACTS PERTAINING TO THE CONTRIBUTION CASE (S–3058/S–3115/S–3144 CONSOLIDATED)

After the arbitration award, all defendants in the contribution case moved for summary judgment. These motions were granted over Integrated's opposition. Subsequently, the court awarded attorney's fees against Integrated as follows: Helms and Wortman, $20,000; Hartford, $20,000; Steorts, $12,000. On appeal, Integrated challenges the grant of summary judgment in favor of the defendants and the awards of attorney's fees. We find no merit in these points.

Hartford cross-appeals claiming that the court's award of attorney's fees to Hartford was too low. We find no abuse of discretion and thus affirm.

Helms and Wortman have cross-appealed from the trial court's denial of their claim for paralegal costs. On this point as well we find no abuse of discretion, and affirm.

## DISCUSSION CONCERNING THE CONTRIBUTION CASE

### A.

▉ 1. The claim for contribution is brought under the Contribution Among Tortfeasors Act, AS 09.16.010 *et seq.* Among the elements of a claim for contribution is a requirement that the contribution defendant must be liable as a tort-

---

**6.** Further, Steorts is the beneficiary of an indemnity agreement contained in a collective bargaining contract between her union and the Borough.

**7.** In their depositions, Steorts and Wortman allegedly both made reference to receipt of documents in April 1987. (The depositions were not included in the record). Steorts' apparently received a handwritten note from a Borough attorney "regarding the contribution action and

what the Borough was willing to do for her." Wortman made reference to a letter from the firm representing the Borough in the confirmation action "confirming the terms of its representation." These documents were never found. The trial judge in the confirmation action concluded that there was "no substantial evidence to show that there was any secret deal ... for indemnity as to the individual witnesses."

feasor.[8] The trial court concluded that Borough Mayor Helms and Chief Finance Officer Wortman were immune from suit as the acts they performed were discretionary. Thus they could not be sued for contribution as they could not have been sued directly by the Borough.

AS 09.65.070(d)(2) provides that neither a municipality nor its agents, officers or employees are liable for conduct involving the exercise or the failure to exercise a discretionary function.[9] The actions of Wortman and Helms in deciding to accept Integrated's bid were clearly discretionary. Discretionary acts are those which require "personal deliberation, decision and judgment...." *See Utah State University of Agriculture and Applied Science v. Sutro & Co.*, 646 P.2d 715, 721 (Utah 1982) (university trustees' investment decisions held to be discretionary and thus protected by the rule of qualified immunity).

However, an additional inquiry is necessary where it is alleged that the discretionary function performed by a government official has violated a statute or, as is alleged here, an ordinance. In such cases, there may be liability if the officials have violated "clearly established" law, unless the officials can prove that they non-negligently were not aware of the law. *Breck v. Ulmer*, 745 P.2d 66, 72, 73 (Alaska 1987).

In the present case, Borough officials eventually determined that the investment into the mutual fund violated the Borough ordinance. They then cancelled the investment. Integrated, however, does not argue that the Borough ordinance clearly prohibited investments into mutual funds. Rather it claims that certain procedural aspects of the ordinance, allegedly ministerial in nature, were violated. Integrated cites FNSB Ord. 3.01.070(C)(6) which pro-

vides: "[t]he mayor shall consult with the borough purchasing agent and borough attorney as necessary concerning irregularities in the bid procedure." This language requires the exercise of discretion. Determining whether the bid procedure was "irregular" requires judgment and is therefore protected. Whether the irregularity requires that the mayor consult the borough purchasing agent and borough attorney likewise requires the exercise of judgment.

Even if consultation were a ministerial duty, such consultation was hardly likely to produce advice to Helms and Wortman that the investment was illegal. Assistant Borough Attorney Hardy wrote on May 22, 1986, that investments using mutual funds were appropriate depending upon what the mutual funds were invested in. We are thus unable to conclude that Helms and Wortman violated clearly established law.

■ Integrated also argues that any immunity which might have been available to Helms and Wortman has been waived because they have posted public official bonds to ensure the faithful performance of their duties. There is no merit to this argument. The immunity reflected in AS 09.65.070(d)(2) (discretionary function of a municipality or its agents, officers or employees) or AS 09.50.250(1) (discretionary function on the part of the state or a state officer, agent or employee) has never been held to be related to whether or not the defendant is bonded or insured. This is in accordance with the majority rule. *Karpovs v. State of Mississippi*, 663 F.2d 640, 646 (5th Cir.1981) ("[t]he majority of jurisdictions have held that procurement of insurance by a governmental unit to protect it from tort liability does not effect a waiver of immunity.") Indeed, so far as we are

---

**8.** AS 09.16.010(b) provides in part:
 The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's pro rata share of the common liability, and the total recovery of that tortfeasor is limited to the amount paid in excess of the pro rata share.
 *See also Ogle v. Craig Taylor Equipment Co.*, 761 P.2d 722, 725–26 (Alaska 1988).

**9.** AS 09.65.070(d)(2) provides:

No action for damages may be brought against a municipality or any of its agents, officers or employees if the claim
 . . . .
 (2) is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or its agents, officers, or employees, whether or not the discretion involved is abused[.]

aware, no jurisdiction has held that an official bond waives tort immunity.

For these reasons, we hold that the trial court correctly entered summary judgment in favor of Wortman and Helms.

■ 2. With respect to the entry of summary judgment in favor of Hartford, the trial court concluded that Hartford was not liable because its principals, Wortman and Helms, were protected by official immunity. Integrated challenges this conclusion on the basis of AS 09.55.470 which provides for suits on official undertakings against sureties by "a person injured by the misconduct or neglect" of the official.[10] This statute, however, contains no implication that the surety is liable under circumstances in which the public official whose conduct is bonded would not be liable. Applicable case law is to the contrary.

In *Spaniol Ford, Inc. v. Froggatt*, 478 P.2d 598 (Wyo.1970), the county clerk erroneously issued a certificate of title to a stolen motor vehicle. The plaintiff relied on the certificate and purchased the stolen vehicle. Subsequently the rightful owner reclaimed the vehicle and the plaintiff suffered a loss. Plaintiff sued the county clerk and her surety. The Wyoming Supreme Court held that the county clerk was immune from suit under the doctrine of official immunity. The bonding company was held to be immune despite a statute authorizing suit on official bonds by persons aggrieved. The court stated:

> There can be no liability on the county clerk's bond unless the county clerk is liable for some default.
>
> . . . .
>
> That is not to say a county clerk's bond serves no purpose. It protects if the official misappropriates public funds, be-

cause there would be no immunity in such a case. It also protects when a county clerk or his deputies default in the performance of ministerial duties. 478 P.2d at 599. *See also Phelps v. Dawson*, 97 F.2d 339 (8th Cir.1938) ("[t]he surety is not liable unless the principal is and, therefore, may plead any defense available to the principal"); 63A Am.Jur. 2d *Public Officers & Employees*, §§ 506, 511 (1984). We conclude therefore that summary judgment was properly entered in favor of Hartford.

■ 3. With respect to Steorts, the trial court held, among other things, that Steorts did not commit a tort, and to the extent that Steorts was required to analyze the bid and make recommendations, her functions would be discretionary. We agree with these conclusions.

Integrated argues that Steorts did not inform Helms or Wortman as to the nature of the investment, and that her failure to do so was tortious. However, the record shows that Steorts passed all information that came to her attention concerning the nature of the investment to Wortman, her immediate superior, and further that Steorts was present when Integrated's agent, Spring, described the nature of the investment to Wortman. Thus there is no factual basis for the contention that Steorts acted unreasonably in failing to communicate with Wortman. With respect to communication with Borough Mayor Helms, as distinct from Wortman, no argument is made that Steorts had a duty to communicate outside the chain of command.

Integrated also argues that Steorts had the duty to ensure that the Borough complied with its investment ordinance, and failed to perform this duty with respect to

**10.** AS 09.55.470 provides:

Suits on undertakings. (a) The official undertaking or other security of a public officer to the state, a borough, city, town, or other municipal or public corporation of like character therein is considered a security to the state or to the borough, city, town, or other municipal or public corporation, as the case may be, and also to all persons severally for the official delinquency against which it is intended to provide.

(b) When a public officer, by official misconduct or neglect of duty, forfeits the officer's official undertaking or other security or renders the sureties liable upon the undertaking or other security, a person injured by the misconduct or neglect or who is by law entitled to the benefit of the security may maintain an action thereon in the person's own name against the officer and the sureties to recover the amount to which the person may be entitled.

the Lord Abbett Fund. Assuming that Steorts had such a duty, it would entail the exercise of personal deliberation and judgment and thus be a discretionary duty which is exempt from liability under AS 09.65.070(d)(2).

B.

With respect to attorney's fees, one firm, Bankston, McCollum & Fossey, represented the defendants in this action initially. The same firm also represented the Borough in the arbitration proceeding and thereafter in the action to confirm the arbitration award. Effective April 29, 1988 the Borough passed an indemnification ordinance which seems to require the Borough to indemnify Wortman, Helms and Steorts for this contribution claim. In May 1988 the Bankston firm withdrew as counsel for Wortman, Helms and Steorts. Thereafter Wortman and Helms were represented by the law firm of Guess & Rudd, and Steorts was represented by the firm of Bradbury, Bliss & Riordan.

Guess & Rudd, on behalf of Wortman and Helms, moved for attorney's fees under Civil Rule 82 for work performed after May 1, 1988. Their total bill for attorney's fees was $63,866.50.[11] The court awarded an attorney's fee of $20,000. The court denied their request for paralegal fees.

Steorts' motion for fees also covered only time expended after May 1, 1988. Actual billings for fees were $28,852.[12] The court awarded as partial compensation under Civil Rule 82 the sum of $12,000.

Hartford, through the Bankston firm, moved for attorney's fees for the time period when the Bankston firm represented all of the defendants as well as for the later period when the Bankston firm represented only Hartford. The total fees were $77,802.48.[13] The trial court awarded $20,000.

 Integrated first argues that attorney's fees should be denied altogether as this is public interest litigation. In *Kenai Lumber Co., Inc. v. LeResche*, 646 P.2d 215, 222–23 (Alaska 1982), we identified four characteristics of public interest lawsuits: (1) whether the case is designed to effectuate a strong public policy; (2) whether numerous people will benefit from the lawsuit assuming that the plaintiff succeeds; (3) whether only a private party could be expected to bring the lawsuit; and (4) whether the litigant claiming public interest status lacks sufficient economic incentive to bring the lawsuit if the lawsuit did not involve issues of general importance. As only the third factor is present here, Integrated's argument on this point must be regarded as frivolous.

 Integrated also challenges the award to Hartford for time expended before May 1, 1988, asserting that attorney's fees may not be awarded under Rule 82 for legal services performed by counsel who has a conflict of interest. Integrated asserts here, as it did with respect to the evidentiary point raised in the confirmation proceedings, that the Bankston firm had a conflict of interest in representing both the Borough in the arbitration proceeding and the individual defendants in the contribution case. In *Moses v. McGarvey*, 614 P.2d 1363 (Alaska 1980), we recognized the rule "that an attorney, disqualified on conflict of interest grounds, generally is barred as a matter of public policy from receiving any fee from either of the opposed interests." *Id.* at 1372. This rule is inapplicable to the present case. There has been no adjudication disqualifying the Bankston firm on conflict of interest grounds. The mere fact that the Borough and the individual defendants had potentially differing interests does not necessarily mean that the firm should have declined to act on behalf of the individual defendants, or that a court would have been warranted in entering an order of disqualification.[14]

Integrated also argues that those attorney's fees incurred on behalf of Helms,

---

11. All of which was evidently billed to the Fairbanks North Star Borough.

12. All of which was evidently billed to the Fairbanks North Star Borough.

13. All of which was evidently billed to the Fairbanks North Star Borough.

14. Apparently the potential conflict was recognized from the outset but the decision was made not to provide separate counsel after full disclo-

Wortman and Steorts prior to May 1, 1988 should not be recoverable by Hartford. Hartford responds that the work during this period was performed on behalf of all of the defendants in the contribution case jointly and that no apportionment is possible. While this is credible, we reject Integrated's argument on the separate ground that, as Integrated points out, the party paying the bill for all three firms engaged in the defense of the contribution case is the Fairbanks North Star Borough. The attorney's fee awards will serve to partially compensate the Borough for its expenditures and there is no realistic concern that the money will go to the wrong entity.

■■■ In addition, Integrated argues that the fees awarded after the passage of the Borough indemnity ordinance effective April 29, 1988 are excessive because at that point there was no reason for the Borough to retain counsel for Helms, Wortman and Steorts. Questions as to the reasonableness of fees to be awarded under Civil Rule 82 are committed to the sound discretion of the trial court. *Albritton v. Estate of Larson*, 428 P.2d 379 (Alaska 1967). It is thus for the trial judge to determine whether too much time was spent by attorneys for the prevailing party or whether too many attorneys were employed. We think that the trial judge committed no abuse of discretion here in view of the following facts. First, the indemnification ordinance itself arguably required independent counsel.[15] Second, each of the three firms engaged in defending the contribution case after May 1, 1988 pursued and presented different legal theories, although there was some duplication. Third, in making the awards of attorney's fees under Civil Rule 82, the trial court granted substantially less than actual billings.

This third factor is the basis on which Hartford filed a separate challenge, S–

3115, to the trial court's attorney's fees decision. Hartford complains that as Integrated's contribution action was conducted in a vexatious manner, awarding only $20,000 of the $77,802 actually incurred is manifestly unreasonable. As noted, this is a question for the sound discretion of the trial court and we see no grounds for concluding that there was an abuse of discretion in this case.

Wortman and Helms also filed a separate appeal, S–3144, challenging the superior court's denial of recovery for paralegal fees. Here, as well, we see no basis for interfering with the court's discretionary decision not to award these fees as recoverable costs.

## CONCLUSION

The judgment of the superior court in S–2936 confirming the arbitration award is AFFIRMED. The award of attorney's fees in S–2936 is REVERSED and REMANDED for further proceedings. The judgments of the superior court in S–3058, S–3115, and S–3144 are AFFIRMED.

RABINOWITZ, J., not participating.

---

sure, primarily on economic grounds. *See* Disciplinary Rule 5–105(A) and (C) and EC 5–14—5–18, Code of Professional Responsibility.

**15.** Part B of the ordinance provides:
*Defense.* The borough shall provide an employee with independent legal counsel (1) when the employee requests and the assembly concurs, (2) when the borough mayor or bor-

ough attorney determines there may be a conflict of interest between the borough and the employee. The borough shall provide the employee with independent legal counsel when the liability of the employee involves claims or defenses not reasonably related to the claims or defenses of the borough.